Filed 3/8/13  P. v. English CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTHONY LAMONT ENGLISH,<br><br>    Defendant and Appellant. | F061375<br><br>(Super. Ct. No. BF132171A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Gabriel Bassan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Brook Bennigson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted defendant Anthony Lamont English of selling or furnishing marijuana for the benefit of or in association with a criminal street gang (Health & Saf. Code, § 11360, subd. (a); Pen. Code,[1] § 186.22, subd. (b)(1); count 1), possessing marijuana for sale for the benefit of or in association with a criminal street gang (Health & Saf. Code, § 11359; § 186.22, subd. (b)(1); count 2), and actively participating in a criminal street gang (§ 186.22, subd. (a); count 3). He was sentenced to a total unstayed term of five years in prison and ordered to pay various fees and fines.[2]

In our original opinion, filed May 9, 2012, we affirmed the judgment in its entirety. The California Supreme Court denied review without prejudice to any relief to which defendant might be entitled after that court decided *People v. Rodriguez*, S187680, and remittitur issued in due course.

Following filing of the state high court's opinion in *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), defendant moved to recall the remittitur. As a result of *Rodriguez* and the Attorney General's concession defendant was entitled to reconsideration in light of that case, we recalled the remittitur, vacated our prior opinion, and reinstated the appeal for the limited purpose of ruling on the merits of defendant's claim of the applicability of *Rodriguez* to the facts of his case. (See *People v. Mutch* (1971) 4 Cal.3d 389, 396-397.) We now conclude defendant's conviction on count 3 must be reversed and his sentence modified accordingly.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

[2] Probation was also revoked, and defendant sentenced to prison, in an unrelated case.

# FACTS

## I

### PROSECUTION EVIDENCE

Around 7:30 p.m. on May 15, 2010, Bakersfield Police Officers Bender and Paiz pulled into the parking lot of the Aneese Market, which is located in the 600 block of Dr. Martin Luther King, Jr., Boulevard (MLK) in Bakersfield. Defendant, Michael Black, and a Mr. Mannings were standing about 20 feet east of the store's front doors. Bender saw defendant extend his right arm and place a small, dark object into Mannings's extended hand. Mannings immediately began walking quickly away from the patrol car while placing his hand into his right front pocket. Based on his training and experience, including his knowledge of regular narcotics activity at the Aneese Market, Bender believed he had witnessed a hand-to-hand narcotics transaction.

Mannings was stopped and searched, and approximately one to two grams of high-quality marijuana were found in his front pocket. The marijuana constituted a usable amount, and had a street value of $20 to $40. Mannings was arrested. Defendant was also searched. Although he had no money on his person, currency was found on Black. On at least four or five occasions, most often in the same area of MLK, Bender had seen one person selling $20 worth of marijuana and a second person collecting the money.[3] Bender believed it was possible the money had changed hands prior to the officers' arrival.

Defendant was wearing dark-colored cargo shorts that sagged five or six inches from his waist, exposing royal blue basketball-type shorts underneath. In defendant's pocket were a vehicle key and what looked like house keys. The vehicle key matched a Mitsubishi Galant parked in the 1500 block of Gorrill Street, the street directly north of

---

**3**    In Bender's experience, the most common form of transaction in that area was hand to hand, usually done in a team-sales fashion.

the store.  On the passenger side floorboard were torn plastic baggies.  In the driver's door map pocket was a plastic bag containing approximately 14 grams of high-quality marijuana that was consistent with the marijuana recovered from Mannings.  The quantity of marijuana in the car had a value of about $200 to $250 in bulk, but more if sold in pieces with a typical street price of $20 per gram.  Also found in the driver's door map pocket was defendant's driver's license.  In response to a hypothetical question that mirrored the evidence presented, Bender opined that the marijuana in the car was possessed for sale.

Officer Beagley contacted defendant and advised him of his rights.  Beagley asked defendant if he was still from the Eastside, meaning the Eastside Crips.  Defendant said he was.[4]  Asked why he had the keys to the car, defendant said he found them.  Beagley asked defendant if he was ever in the car.  Defendant first said no, but, after being told his driver's license had been found inside, admitted he was in the vehicle earlier in the day.

Officer Littlefield, who was assigned to the Bakersfield Police Department Special Enforcement Gang Unit, testified as the prosecution's gang expert.  He explained that the Eastside Crips (who the parties stipulated were a criminal street gang in Kern County) had a traditional territory, and that MLK was a major thoroughfare through the traditional boundaries of the gang.[5]  The Aneese Market was a particular stronghold for the Eastside Crips, who were associated with the color royal blue.

---

[4]    Beagley, who had been in the gang unit since July 2008, had had contact with defendant more than 10 times during his time in that unit.  During those contacts, Beagley had spoken to defendant several times about gang-related issues, usually about the Eastside Crips.

[5]    In Littlefield's estimation, the gang's traditional territory comprised a fairly even mix of African-American and Hispanic residents.  A portion of the territory overlapped with the territory claimed by the Varrio Bakers, a traditionally Hispanic/Sureno gang.

Littlefield had contact with Eastside Crips almost every working day. From his training, experience, and conversations with them, he learned that their primary criminal activities were assaults with deadly weapons, murders, burglaries, thefts, narcotics sales (including sales of marijuana), and weapons violations.

Littlefield researched defendant in various law enforcement databases, and he summarized booking records, prior offense reports, and street checks for the jury. Littlefield also reviewed the offense reports concerning the present case. He found the subjects with whom defendant was contacted and the activity significant. Littlefield also found it significant that defendant was wearing a necklace with "AMP" on it. When Beagley asked defendant if it referred to his gang moniker, defendant affirmed that it did and that he went by that moniker in the area. In addition, Littlefield found the location to be important. Littlefield had been involved in and was aware of numerous investigations involving the Aneese Market, with Eastside Crips being involved in sales of narcotics, including marijuana, and weapons violations. Someone who was not a member or an affiliate of the gang would not be allowed to sell drugs at that location without severe and violent repercussions from members of the Eastside Crips, because the person would be competing with the Eastside Crips' money flow.

Based on everything he reviewed, Littlefield opined that on May 15, 2010, defendant was a member of the Eastside Crips criminal street gang. In answer to questions that set out the evidence presented in hypothetical form, Littlefield further opined that the sale of marijuana was for the benefit and in furtherance of the Eastside Crips. Selling marijuana or drugs at the Aneese Market benefited the Eastside Crips by allowing the individual gang member to have a means of income without needing legitimate employment; the monies derived from the narcotics sales provided financial ability for the individual to purchase firearms and additional narcotics for sale, pay for daily living expenses, and support in-custody members of the gang. The crime also furthered the gang as a whole by establishing and maintaining a foothold in that particular

5.

area, which allowed other gang members to conduct their criminal activities in the same area and reap similar benefits. By establishing the foothold, and maintaining the gang's status and stronghold at that location as well as within the traditional boundaries of the gang, the crime also promoted, furthered or assisted gang members in criminal conduct. An Eastside Crip selling marijuana at that particular location prevented other gangs from being able to "set up shop" and sell there.

Littlefield further opined that the possession of marijuana for sale was for the benefit and furtherance of the Eastside Crips. He explained that the use of a vehicle as a storage place for weapons and narcotics was a longstanding practice of the Eastside Crips, allowing them to make it difficult for law enforcement to locate the main source of their narcotics for sale. The possession for sale promoted, furthered, or assisted members in criminal conduct, because maintaining the gang's status in the area with one Eastside Crip selling narcotics there would keep members of other gangs from coming into that area to "set up shop."

Littlefield opined that, even assuming an Eastside Crip gave away or furnished marijuana to someone at the Aneese Market, it still would benefit the gang by establishing a customer base. Furnishing an initial dose of narcotics is a common tactic used to get a person accustomed to coming to one seller and one location to purchase narcotics. It also promotes, furthers, or assists gang members in criminal conduct by bringing a customer base back to that one location to purchase additional narcotics.

## II

### DEFENSE EVIDENCE

Maurice Bellamy owned the Mitsubishi Galant involved in this case. The marijuana found in the car was his. Bellamy was in the Aneese Market when police came to the vehicle. When he first exited the store and saw the police, he walked away and left with a friend whose car was parked nearby. They drove around for about 30 minutes, then returned to the market when Bellamy received a call from his sister, saying

6.

the police had his keys. The police returned Bellamy's keys to him and did not impound the vehicle. Bellamy told officers the marijuana was his. He had his medical marijuana card with him and was not arrested.

Bellamy had thought he had his keys with him, but apparently he had left them on top of a post in front of the store. He was acquainted with defendant, but did not let him drive the car anytime that day. He was not sure how defendant's driver's license came to be in the vehicle.

Harlan Hunter, a private investigator and criminal justice instructor at Bakersfield College, testified as the defense's gang expert. He was familiar with the Eastside Crips and believed Littlefield was correct about the gang's traditional territorial boundaries. Hunter grew up in East Bakersfield. When he was young, it was primarily an African-American community. Over the years, however, it had become predominantly Hispanic, with perhaps 35 percent of the community still African-American. Gangs constituted a very small percentage of that population. There were individuals who were not gang members who engaged in narcotic sales in the area, and there were also Hispanic gangs who controlled territory and sold drugs in the area.

Hunter reviewed the materials concerning defendant about which Littlefield testified. In Hunter's experience, booking sheets can be unreliable. They ask if the person belongs to or associates with a gang, rather than breaking it down. In Hunter's experience, someone could associate with gang members who are relatives or friends. Moreover, when someone says he or she is from the east side, that person is not necessarily referring to a gang, but rather to a geographical area.

From investigating the Eastside Crips and talking to people he suspected were members, Hunter had learned that often, the proceeds derived from criminal activity went to personal use, such as paying rent, buying food and gasoline, and buying clothing. Hunter acknowledged that some gang members diverted some of the proceeds to the

activities of the gang, but, to his knowledge, no study had ever been conducted to determine the percentage who did so.

In forming his opinion as to whether defendant was a gang member, Hunter reviewed everything Littlefield discussed. In addition, he took into account that defendant was paid a legitimate salary by his uncle, who employed him at Wings and More, indicating defendant was generating income from a source other than illegal activities. Hunter's investigation further revealed that "Amp" was a nickname given to defendant when he was a child, and that it was also the nickname of defendant's father and a nickname defendant had given to his son. Thus, it was not a gang moniker given to defendant by gangsters. Hunter examined defendant's body and found no tattoos representing the Eastside Crips. This was significant to Hunter, because gang members wear tattoos as badges of honor and use them to send a message.

Based on everything he reviewed, Hunter formed the opinion that at the time of the alleged crimes, defendant was not a member of the Eastside Crips. Hunter conceded, however, that in order to sell narcotics at the Aneese Market, an individual would have to have a certain relationship to the area. It was "highly unlikely" a member of a gang that was a rival of the Eastside Crips would be selling drugs there. In order for a nongang member to participate in selling drugs at that location, the person would have to have a pass from the gang. Normally, those who receive passes are those who grew up there and are friends or relatives of the gang's members. Hunter was unable to give an opinion, in response to a hypothetical question based on the evidence presented in this case, whether the person possessed the marijuana for sale for the purpose of furtherance of a criminal street gang, as each case had to be assessed individually and the motivation of the person known. There were times when gang members sold drugs and used the proceeds exclusively for their own personal benefit, but there were also times when the proceeds might be used to purchase items such as weapons, in order to promote and further the criminal activity of the gang.

8.

# DISCUSSION

## I

### SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence was insufficient to uphold the jury's true findings on the section 186.22, subdivision (b)(1) enhancements, and the conviction for violating section 186.22, subdivision (a).  The test of sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt.  (*People v. Perez* (1992) 2 Cal.4th 1117, 1133; *People v. Johnson* (1980) 26 Cal.3d 557, 578; accord, *Jackson v. Virginia* (1979) 443 U.S. 307, 319.)[6]  Substantial evidence is that evidence which is "reasonable, credible, and of solid value."  (*People v. Johnson*, *supra*, at p. 578.)  An appellate court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."  (*People v. Reilly* (1970) 3 Cal.3d 421, 425.)  An appellate court must not reweigh the evidence (*People v. Culver* (1973) 10 Cal.3d 542, 548), reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 367).  "Where the circumstances support the trier of fact's finding of guilt, an appellate court cannot reverse merely because it believes the evidence is reasonably reconciled with the defendant's innocence.  [Citations.]" (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1747.)  This standard of review is applicable to both convictions and gang enhancements (*People v. Leon* (2008) 161 Cal.App.4th 149, 161),

---

[6]  Because the traditional standard of review applicable to claims of insufficient evidence comports with and incorporates the requirements of due process, we need not address defendant's separately presented claim that the due process clause was violated by the prosecution's failure to prove every element beyond a reasonable doubt.

and regardless of whether the prosecution relies primarily on direct or on circumstantial evidence (*People v. Lenart* (2004) 32 Cal.4th 1107, 1125).

**A.      The evidence was sufficient to support the section 186.22, subdivision (b)(1) enhancements on counts 1 and 2.**

Section 186.22, subdivision (b)(1) prescribes a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members …." In order to prove the elements of this enhancement, the People may present expert testimony on criminal street gangs, as they did in this case. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047-1048; *People v. Gardeley* (1996) 14 Cal.4th 605, 617-620 (*Gardeley*).) However, "[a] gang expert's testimony alone is insufficient to find an offense gang related. [Citation.] '[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang.' [Citation.]" (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 657.)

Defendant contends the only pertinent evidence here was provided by Littlefield, who, defendant says, relied on two facts in forming his opinions: (1) defendant was a member of the Eastside Crips criminal street gang, and (2) defendant committed the charged offenses in Eastside Crip territory. Defendant says Littlefield's opinions were not based on any facts particularized to this incident or this defendant, and were insufficient to sustain the jury's true findings. As support, defendant relies on three cases from this court: *People v. Killebrew* (2002) 103 Cal.App.4th 644 (*Killebrew*), disapproved on another ground in *People v. Vang* (2011) 52 Cal.4th 1038, 1047, footnote 3; *In re Frank S.* (2006) 141 Cal.App.4th 1192 (*Frank S.*); and *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*). We find these cases to be distinguishable.

In *Killebrew*, officers observed three cars apparently traveling together in Eastside Crip territory. In each of the first two vehicles (a Chevrolet and a Mazda), they saw four young Black males. In the third car (a Chrysler), the officers saw two young Black males plus one or two passengers in the back seat. Of all the men, the officers recognized only Leon Anderson, whom they knew to be a member of the Eastside Crips. Because the cars carried young Black males, appeared to be traveling together, and one passenger was an Eastside Crip, the officers concluded all those in the vehicles were members of the gang. They further reasoned that because the gang would be expecting retaliation for an earlier shooting, they would be carrying weapons for protection. Accordingly, officers initiated a stop of the Chevrolet, in which Anderson was riding. As they approached, they saw the rear seat passenger place a handgun under the front seat. Officers arrested the four occupants of the vehicle and recovered the handgun. Meanwhile, the other two vehicles made a U-turn and drove past the location of the stop; other officers were dispatched and found these vehicles at a nearby taco stand. A search of the area revealed a handgun hidden in a shoe box next to a Dumpster. All seven occupants of the vehicles were arrested. Killebrew was not in the Chevrolet or the Mazda, and his presence in the Chrysler was not established with any degree of certainty. He was seen observing the stop of the Chevrolet, however, and was arrested and charged with conspiring to possess the two handguns. At trial, a police officer testified as an expert on gangs to establish not only Killebrew's membership in a criminal street gang, but also his subjective knowledge and intent to possess the handguns. Killebrew ultimately was convicted of conspiracy. (*Killebrew*, *supra*, 103 Cal.App.4th at pp. 647-649.)

On appeal, Killebrew argued, inter alia, that the trial court erred by allowing the gang expert to give an opinion about the intent and knowledge of gang members when in the presence of guns. (*Killebrew*, *supra*, 103 Cal.App.4th at pp. 649-650.) In this respect, the expert testified that when one gang member in a car possesses a gun, every other gang member in the car knows of the gun and constructively possesses it. The

expert further opined that the occupants of the Chrysler, to which no gun was ever linked, would know of the guns in the other two vehicles and would mutually possess those guns. (*Id*. at p. 652 & fn. 7.)

This court undertook an extensive review of cases addressing the propriety of expert testimony on gangs. (*Killebrew*, *supra*, 103 Cal.App.4th at pp. 652-657.) We observed: "None of [the cases reviewed] permitted testimony that a specific individual had specific knowledge or possessed a specific intent." (*Id*. at p. 658.) Because the expert in essence testified to the subjective knowledge and intent of each occupant of each vehicle, we concluded, his opinion did nothing more than inform the jury how he believed the case should be decided. His beliefs were irrelevant and should have been excluded as an improper opinion on the ultimate issue. Since the expert's erroneously admitted testimony was the only evidence supporting the conspiracy theory, reversal was required. (*Id*. at pp. 658-659.)

In *Frank S.*, *supra*, 141 Cal.App.4th 1192, a police officer detained the minor for failing to stop at a red light while riding a bicycle. The minor, who was alone, gave a false name, and was found to possess a concealed knife, a small bindle of methamphetamine, and a red bandana. The minor explained he had been attacked two days earlier and needed the knife for protection against "'the Southerners'" because they felt he supported northern street gangs. The minor also said he had several friends in the northern gangs. He was charged with carrying a concealed dirk or dagger with a gang enhancement. At the contested jurisdiction hearing, the prosecution's gang expert opined, inter alia, that the minor possessed the knife to protect himself; a gang member (which she found the minor to be) would use the knife for protection from and to assault rival gang members; and the minor's possession of the knife benefited the Nortenos by helping provide them protection should they be assaulted. The court found the charge and enhancement allegation true. (*Id*. at pp. 1195-1196.)

Relying in large part on *Killebrew*, we agreed with the minor's claim that substantial evidence did not show he had a specific intent to promote, further, or assist in any criminal conduct by gang members. (*Frank S.*, *supra*, 141 Cal.App.4th at pp. 1196-1198.) We stated:

> "In the present case, the expert simply informed the judge of her belief of the minor's intent with possession of the knife, an issue reserved to the trier of fact.… [T]he prosecution presented no evidence other than the expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue to establish that possession of the weapon was 'committed for the benefit of, at the direction of, or in association with any criminal street gang ….' [Citation.] The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense. In fact, the only other evidence was the minor's statement to the arresting officer that he had been jumped two days prior and needed the knife for protection. To allow the expert to state the minor's specific intent for the knife without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended.

> "… [A]ppellant's criminal history and gang affiliations cannot solely support a finding that a crime is gang-related under section 186.22. [Citation.] 'The crime itself must have some connection with the activities of a gang, which we conclude means a "criminal street gang" ….' [Citation.] Based on section 186.22, a crime fails to be 'gang related' unless appellant committed it ""'for the benefit of, at the direction of, or in association with' a street gang."' [Citation.] While evidence established the minor has an affiliation with the Nortenos, membership alone does not prove a specific intent to use the knife to promote, further, or assist in criminal conduct by gang members. [Citation.]" (*Frank S.*, *supra*, 141 Cal.App.4th at p. 1199.)

In *Ramon*, *supra*, 175 Cal.App.4th 843, Ramon was stopped while driving a stolen vehicle. He had an unregistered firearm in his possession. He was charged with various offenses, and a section 186.22, subdivision (b)(1) enhancement was alleged. (*Ramon*, at p. 846.) At trial, the prosecution's gang expert testified that the location at which Ramon and his passenger (Martinez) were stopped was in the heart of the territory of the Colonia

13.

Bakers criminal street gang, and that the territory was controlled through violence and intimidation. The primary activities of the gang were identified as sales and possession of narcotics, theft, extortion, burglaries, robberies, car theft, and victim and witness intimidation. (*Id*. at p. 847.) Asked how possession of a stolen truck related to those crimes, the expert replied that a gang member driving a stolen truck within the gang's territory could conduct numerous crimes, then dispose of the vehicle and have no ties to it or the crime committed in it. Similarly, a gang member in a stolen vehicle with an unregistered gun could commit any of the crimes and not have ties to the gun or the vehicle. The expert further testified that the unregistered gun and stolen vehicle could be used to spread fear and intimidation; hence, driving a stolen vehicle and possessing an unregistered firearm provided a benefit to the Colonia Bakers criminal street gang. Moreover, the stolen vehicle and unregistered firearm were the tools the gang needed to commit other crimes to further the gang. (*Id*. at pp. 847-848.)

On appeal, this court found that the expert relied, in forming his opinions, on the crimes Ramon and Martinez were accused of committing, the expert's belief the pair were members of the Colonia Bakers criminal street gang, and the fact they were stopped in territory claimed by the Colonia Bakers. (*Ramon*, *supra*, 175 Cal.App.4th at p. 849.) We concluded: "This case cannot be distinguished in a meaningful manner from *Killebrew* or *Frank S.* The People's expert simply informed the jury of how he felt the case should be resolved. This was an improper opinion and could not provide substantial evidence to support the jury's finding. There were no facts from which the expert could discern whether Ramon and Martinez were acting on their own behalf the night they were arrested or were acting on behalf of the Colonia Bakers. While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation. Speculation is not substantial evidence. [Citation.]" (*Id.* at p. 851.) We further held that the fact Ramon was with another gang member in gang territory, standing alone, was not

14.

enough to establish Ramon committed the crimes with the specific intent to promote, further, or assist criminal conduct by gang members. (*Ibid.*)

In the present case, the record presents an underlying evidentiary foundation for Littlefield's opinions. (See *People v. Galvez* (2011) 195 Cal.App.4th 1253, 1261.) Defendant, a member (or at least associate) of the Eastside Crips criminal street gang, was observed committing a crime that was one of the gang's primary activities. The location was a stronghold of the gang within the gang's traditional territorial boundaries. The evidence supports the inference defendant was dressed so as to consciously and deliberately display the gang's color while he committed the crime. In essence, defendant was intentionally advertising the gang and one of its primary activities, whether he was selling the marijuana or giving it away. Even if he was not making money for the gang, his presence and blatant promotion of the Eastside Crips helped the gang maintain its status and stronghold at that location. This in turn allowed other Eastside Crips to conduct criminal activities in the area by preventing other gangs from encroaching on the location and siphoning off the customer base there. It can reasonably be inferred this was becoming increasingly important as the demographics of the community changed and the turf of Hispanic gangs started to overlap portions of the Eastside Crips' traditional territory.

Reversal on the ground of insufficiency of the evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Here, jurors reasonably could have concluded, from the evidence as a whole and particularly defendant's display of the gang's color during his commission of the crimes, that he committed those crimes for the benefit of the Eastside Crips criminal street gang, and that he did so with the specific intent to promote, further, or assist criminal conduct by gang members.

**B.** **The evidence was insufficient to sustain defendant's conviction for violating section 186.22, subdivision (a) in count 3**.

"Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang," has committed the substantive offense set out in subdivision (a) of section 186.22. The elements of this offense "are (1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 56.)

"All three elements can be satisfied without proof the felonious criminal conduct promoted, furthered, or assisted was gang related." (*People v. Albillar, supra,* 51 Cal.4th at p. 56.) In *People v. Castenada* (2000) 23 Cal.4th 743, however, the California Supreme Court stated: "[A] person who violates section 186.22[, subdivision] (a) has also aided and abetted a separate felony offense committed by gang *members* …." (*Id.* at p. 749, italics added.) "[S]ection 186.22[, subdivision] (a) imposes criminal liability … only when a defendant 'actively participates' in a criminal street gang while also aiding and abetting a felony offense committed by the gang's *members*. [Citation.]" (*Id.* at pp. 750-751, italics added.)

Defendant reads the foregoing language to say that, as a matter of law, an individual acting alone cannot be guilty of the substantive offense of active participation in a criminal street gang. Because there was no evidence presented at trial that he was working in cooperation with anyone else in conjunction with his marijuana-related offenses, he argues, the evidence was insufficient to sustain his conviction on count 3.

16.

In *Rodriguez, supra*, 55 Cal.4th 1125, the California Supreme Court agreed with the position advocated by defendant — that a gang member who commits a felony, but acts alone, does not violate section 186.22, subdivision (a). Looking to the plain language and grammatical structure of the statute, the court reasoned: "Section 186.22[, subdivision] (a) speaks of 'criminal conduct by *members* of that gang.' (Italics added.) '[M]embers' is a plural noun. The words 'promotes, furthers, or assists' are the verbs describing the defendant's acts, which must be performed willfully. The phrase 'any felonious criminal conduct' is the direct object of these verbs. The prepositional phrase 'by members of that gang' indicates who performs the felonious criminal conduct. Therefore, to satisfy the third element [of the offense], a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct. The plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member. [Citation.]" (*Rodriguez, supra*, at p. 1132 (lead opn. of Corrigan, J.); accord, *id*. at pp. 1139-1140 (conc. opn. of Baxter, J.).)

Defendant is correct that there was no actual evidence he was working in cooperation with anyone. Although there was some suggestion at trial that defendant and Black were working together in a team-sales fashion, it was not developed. Similarly, although Littlefield found the individuals defendant was with when contacted in the present case "important" in terms of Littlefield's expert research and review of defendant, he did not explain why or testify concerning Black's gang affiliation, if any. Accordingly, we can only speculate Black was a member of defendant's gang and that the two aided and abetted each other or were coparticipants acting in concert. Speculation is not evidence, much less substantial evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 735.)

17.

Defendant's conviction on count 3 must be reversed. Retrial thereon is barred. (*People v. Anderson* (2009) 47 Cal.4th 92, 104 & cases cited.)[7]

## II

### ADMISSION OF TESTIMONIAL HEARSAY

Defendant contends the admission of testimonial hearsay statements, in the guise of expert opinion, violated his Sixth Amendment right to confront and cross-examine witnesses. He does not identify any specific out-of-court statements that Littlefield repeated during his testimony, but rather complains that some of the testimony was based on multiple levels of hearsay and hearsay based on statements made by unidentified and unnamed sources. (See *People v. Ramirez* (2007) 153 Cal.App.4th 1422, 1426.) Although at trial defendant objected on reliability and hearsay grounds, he did not raise a confrontation claim. Assuming his claim of error was not thereby forfeited (see, e.g., *People v. Redd* (2010) 48 Cal.4th 691, 730 & fn. 19; *People v. Chaney* (2007) 148 Cal.App.4th 772, 779), we reject it.

Except under limited circumstances, if a hearsay statement is "testimonial," it cannot be introduced against a defendant in a criminal trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him or her. (*Crawford v. Washington* (2004) 541 U.S. 36, 53-54 (*Crawford*).) Although "leav[ing] for another day any effort to spell out a comprehensive definition of 'testimonial,'" the *Crawford* court noted that "at a minimum" it includes "police interrogations." (*Id*. at p. 68.)

Not every conversation between a gang member and a gang expert constitutes "interrogation" or results in testimonial evidence for confrontation clause purposes within

---

[7]     Our conclusion does not affect the validity of the section 186.22, subdivision (b) enhancements on counts 1 and 2. (See *Rodriguez*, *supra*, 55 Cal.4th at pp. 1138-1139 (lead opn. of Corrigan. J.); *id.* at p. 1140 (conc. opn. of Baxter, J.).)

the meaning of *Crawford* and its progeny. (See *Michigan v. Bryant* (2011) 562 U.S. ___, ___ [131 S.Ct. 1143, 1152-1153]; *People v. Blacksher* (2011) 52 Cal.4th 769, 811-812.) Moreover, several appellate courts have held that *Crawford* does not apply to hearsay that forms the basis of an expert's opinion, reasoning variously that hearsay in support of expert opinion is not the sort of testimonial hearsay the use of which *Crawford* condemned (*People v. Ramirez, supra,* 153 Cal.App.4th at p. 1427) or that hearsay relied on by experts in formulating their opinions is not testimonial because it is not offered for the truth of the facts stated (*People v. Cooper* (2007) 148 Cal.App.4th 731, 747; *People v. Thomas* (2005) 130 Cal.App.4th 1202, 1210).

Recently, the court in *People v. Hill* (2011) 191 Cal.App.4th 1104 disagreed, noting that "where basis evidence consists of an out-of-court statement, the jury will often be required to determine or assume the truth of the statement in order to utilize it to evaluate the expert's opinion." (*Id*. at p. 1131, fn. omitted.) The court found, however, that most of the hearsay relied upon by the gang expert in its case would not be considered testimonial under *Crawford*. (*Hill*, at pp. 1135-1136.) It also found itself bound to follow *Gardeley*, *supra*, 14 Cal.4th at pages 618-619, which held that gang experts may properly relate in detail the hearsay on which they relied (*People v. Hill, supra,* 191 Cal.App.4th at p. 1131; see also *People v. Valdez* (1997) 58 Cal.App.4th 494, 510-511).

Most of the hearsay relied on by Littlefield was not testimonial. Moreover, we too are bound to follow applicable Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Under *Gardeley*, defendant's argument fails.

## III

### *PITCHESS*

**A.    Background**

Prior to trial, defendant filed a motion, pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), for discovery of information contained in the personnel

records of Bakersfield Police Officers Bender and Beagley. Specifically, defendant sought (1) the names, addresses, and telephone numbers of all persons filing complaints against said officers, including, but not limited to, complaints for acts indicating or constituting dishonesty, false arrest, and/or the fabrication of charges, reports, and/or evidence; (2) the dates such complaints were filed; and (3) whether any disciplinary action was taken against the officer as a result, and the nature of such discipline. The City of Bakersfield and the officers opposed the motion, except with respect to citizen complaints against Bender for dishonesty as to false reporting only. As to that category, it was conceded defendant had made a sufficient showing to justify an in camera review.

The trial court ruled that, in light of the charges and circumstances in this case, it would conduct an in camera review of the records of both officers with respect to dishonesty. At the conclusion of that hearing, the court expressly found there was nothing to be disclosed. It ordered the transcript of the in camera proceedings sealed.

Defendant now asks us to review the trial court's procedure in conducting the *Pitchess* hearing, and its determination there were no discoverable materials. In his reply brief, he further contends the trial court erred by failing to make a record of the evidence it considered in chambers when it ruled on the *Pitchess* motion. The Attorney General contends the trial court properly exercised its discretion.

B.     **Analysis**

A criminal defendant has a limited right to discovery of peace officer personnel records and records of citizen complaints against peace officer personnel that are maintained pursuant to section 832.5; such records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045. (§ 832.7; *Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 318.) A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists "when the defendant shows both '"materiality" to the subject matter of the

20.

pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179.)

If a defendant establishes good cause, the custodian of records should bring to court all documents that are potentially relevant to the defendant's motion. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226.) The trial court must then review the records in camera to determine what information, if any, should be disclosed. Subject to the exceptions and limitations contained in Evidence Code section 1045, subdivisions (b)-(e), the court must disclose to the defendant such information as is relevant to the subject matter involved in the litigation.[8] (*People v. Gaines, supra,* 46 Cal.4th at p. 179.) A trial court is afforded wide discretion in ruling on a motion for access to law enforcement personnel records, and we will reverse only on a showing of abuse of that discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330; *People v. Samayoa* (1997) 15 Cal.4th 795, 827; *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086; see *Pitchess*, *supra*, 11 Cal.3d at p. 535.)

The record of the trial court's in camera examination of the officers' records is adequate for our review, and demonstrates that the court followed the proper procedure. (See *People v. Mooc, supra,* 26 Cal.4th at pp. 1228-1229.) Moreover, we have independently reviewed Bender's and Beagley's sealed files, which have been made part of the record on appeal but which have not been disclosed to counsel for either party. Our review reveals no materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion.

---

[8]     For our purposes, the pertinent limitations are contained in subdivision (b) of Evidence Code section 1045, which excludes from disclosure "(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit."

Accordingly, we conclude the trial court "properly exercised its discretion" by ruling there was nothing to be disclosed to the defense. (*People v. Samayoa, supra,* 15 Cal.4th at p. 827; see also *People v. Hughes, supra,* 27 Cal.4th at p. 330.)

## DISPOSITION

The conviction on count 3 (Pen. Code, § 186.22, subd. (a)) is reversed and sentence thereon, which was stayed pursuant to Penal Code section 654, is vacated. The judgment is modified to show imposition of a court security fee (Pen. Code, § 1465.8) in the amount of $60, and a court facilities funding assessment (Gov. Code, § 70373) in the amount of $60. As so modified, the judgment is affirmed. The trial court is directed to cause to be prepared an amended abstract of judgment showing said changes, and to forward a certified copy of same to the appropriate authorities.

_____
DETJEN, J.

WE CONCUR:


_____
CORNELL, Acting P.J.


_____
POOCHIGIAN, J.

22.