[No. G036049. Fourth Dist., Div. Three. Mar. 16, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ALAN CHANEY, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IIA.2., B., C., and D.

COUNSEL

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Scott C. Taylor, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

SILLS, P. J.—Robert Alan Chaney appeals from the judgment sending him to prison for two consecutive, indeterminate 14-years-to-life terms plus a consecutive 10-year term, after a jury convicted him of three counts of kidnapping during the commission of a carjacking. (See Pen. Code, § 209.5.)[1] He was also convicted of the lesser included offense of carjacking, but that was dismissed by the trial court. Subsequently, the court found Chaney had three prior prison terms (see § 667.5, subd. (b)), one prior serious felony conviction (see § 667, subd. (a)), and one prior "strike" conviction (see §§ 667, subds. (b)–(i), 1170.12).

On appeal, Chaney contends the trial court erred in admitting a nontestifying witness's statement because it allegedly violated his right to confront and

---

[1] All further section references are to the Penal Code unless otherwise stated.

cross-examine a witness under the Sixth Amendment. (See *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354]; see also *Davis v. Washington* (2006) 547 U.S. 813 [165 L.Ed.2d 224, 126 S.Ct. 2266].) In the unpublished portion of our opinion, we address his other contentions: the allegedly erroneous admission of other, uncharged acts of violence; the allegedly erroneous jury instructions; the insufficiency of evidence to sustain the kidnapping charges; and the trial court's discovery ruling following the in camera hearing to review the police officers' confidential personnel files. In that last issue, he requests we review the sealed transcript of that closed hearing and, from our examination, determine the rectitude of the trial court's ruling on his motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]. We affirm.

I

FACTS

Police officers, carrying an arrest warrant for Chaney, approached his address in Garden Grove in 2003, when they heard a woman's screams. Suddenly, Chaney emerged from an apartment and ran along the balustrade and back into the apartment. The officers surrounded the apartment and knocked repeatedly. A woman, crying hysterically, eventually opened the door and frantically pointed towards the living room, which was occupied by three other sobbing women and an upset child. Chaney could be seen standing next to a sliding glass door, which was open to the balcony.

Kevin La Croix, a sergeant with the Garden Grove Police Department, drew his gun and ordered Chaney to lie down. Instead, Chaney leapt from the second story balcony into a tree and then lowered himself to the ground. He then immediately sprinted from the area.

Reina Lopez, the woman who had opened the door, was hyperventilating and crying hysterically. One of the officers attempted to calm her, although the most he was able to do was to get her to breathe normally while she continued to sob. He managed to learn from her that Chaney had held a long-bladed knife to her throat and yelled, "you fucking bitch; you called the cops!" Chaney then sliced off a piece of coaxial cable to bind the women but was interrupted by the officers' entry before he was able to do it. It was at that point he leapt from the balcony.

Outside, other officers pursued Chaney on foot, with two officers striking him in the arm and leg with their batons, and a third officer spraying him with pepper spray. None of their actions seemed to impede Chaney. However, they

heard Chaney drop something metallic as he scaled a tall block wall. The officers grabbed the item, which turned out to be a knife with an eight-inch blade.

Rounding the wall, the officers fanned out into the parking lot on the other side, looking for Chaney. Unfortunately, before they located him, he spotted a middle-aged woman, Guadalupe Garcia, sitting in her Nissan Altima outside a grocery store, along with her nine-year-old son and three-year-old grandson. He darted towards her passenger door and opened it before she was able to lock it. Screaming threats to kill her, he ordered her to drive away. Upset and terrorized, she tried to do as he commanded but apparently not fast enough to satisfy him. He grabbed her arm and began shaking her. She told him she would do whatever he wanted as long as he didn't hurt her or the children.

Garcia started driving out of the parking lot, but the officers became suspicious of the vehicle and blocked its path. Chaney ducked down under the dashboard of the car, demanding Garcia keep driving. When she did not respond, he reached over and pressed the accelerator with his hand, but the car was in park and did not move. The officers then observed Chaney lunge towards Garcia, and one officer opened fire through the front windshield, striking Chaney in the hip. Even this did not subdue him: He continued to flail his arms and legs against the officers, resisting their efforts to handcuff and remove him.

At trial, Chaney responded to the charges by calling his then divorced wife, Shannon Chaney, to testify that Garden Grove police officers had told her that they would shoot defendant if he continued to evade their arrest. The last threat had been delivered to her at her home the day of, or just before Chaney's arrest, although similar statements had been made to her five or six times previously. She had relayed these warnings to Chaney.

## II

## DISCUSSION

### A.  Admission of Lopez's Statements

### 1.  Right of Confrontation Violation

Chaney contends the trial court erred when it permitted James Colegrove, a police sergeant with Garden Grove Police Department, to testify that Lopez told him that Chaney refused to let any of the women in the apartment open the door to the officers. She related that he got angry, yelling at them, "You

bitches, you called the cops!" He then followed her into a back bedroom and threatened her with the knife. He held her there for about 10 seconds and then bent down, cut a length of coaxial cable from a television connection and told them he was going to tie them up. He then went to peer through the front door peephole and again refused to open the door to the police.

Chaney contends admission of these statements by Lopez to Colegrove denied him his right to confront and cross-examine an adverse witness. (See *Crawford v. Washington, supra,* 541 U.S. at pp. 52–54.) He argues that statements given spontaneously by a declarant while under the excitement of an event are inadmissible when they relate to events having transpired already, as distinct from those which might occur in the future. (See *Davis v. Washington, supra,* 547 U.S. 813 [126 S.Ct. 2266].) And, as he claims these statements' admission cannot be shown to be harmless beyond a reasonable doubt, the error requires a reversal of the conviction. (See *People v. Archer* (2000) 82 Cal.App.4th 1380, 1394 [99 Cal.Rptr.2d 230].)

The Attorney General contends the issue was waived[2] because Chaney never gave as his grounds for the objection that there was a constitutional violation. (See Evid. Code, § 353.) Chaney responds that one of the enunciated reasons for the objection was that he was unable to cross-examine the declarant, thus *implying* the constitutional ground. But, as noted by the Attorney General, the inability to cross-examine a declarant is a definitional characteristic of any *hearsay*; it does not necessarily trigger constitutional considerations.[3]

Based on the context of the objection as well as its language, the objection was one of hearsay, not the Sixth Amendment. In *People v. Alvarez* (1996) 14 Cal.4th 155 [58 Cal.Rptr.2d 385, 926 P.2d 365], an analogous, ambiguous ground for objection was deemed insufficient to preserve the constitutional issue for appeal. (*Id.* at pp. 186–187.) Chaney replies that *Alvarez* was decided before *Crawford,* and that timing was pivotal. He argues *Alvarez* would have been decided differently had the California Supreme Court considered the same situation after *Crawford.*

---

[2] We note that the terms, waiver and forfeiture, have been used interchangeably even when the situation is distinctly one or the other. (See *People v. Williams* (1999) 21 Cal.4th 335, 340, fn. 1 [87 Cal.Rptr.2d 412, 981 P.2d 42].)

[3] As noted by the Attorney General, it is clear that all parties at trial accepted the objection to be one of hearsay. At the time of the objection, the defense *stated*: "So I understand it's a hearsay exception, but it's also my understanding that she was arrested for a warrant herself. So she has a reason to lie to the police and I have no way of examining her on her reasons for that statement." The trial court then clarified that the prosecution would not object to the jury learning of that outstanding warrant for Lopez, and also informed the prosecutor he would have to lay the foundation to meet the requirements of the hearsay exception found in Evidence Code section 1240. Although given the opportunity by the trial court, the defense argued nothing further on the Lopez statement.

In *Alvarez,* the defense moved the court in limine to bar the prosecution from introducing certain statements because they were inadmissible hearsay. The court determined the statements fell within the exception to the hearsay rule for spontaneous declarations made " 'while the declarant was under the stress of excitement caused by such' " act or event. (*People v. Alvarez, supra,* 14 Cal.4th at p. 185.) The defense argued on appeal, however, that the statements violated the Sixth Amendment. This argument was deemed waived even though one line in the written in limine motion "refer[red] to the 'confrontation rule' (capitalization deleted) . . . ." (14 Cal.4th at p. 186.)

Chaney invokes language from *People v. Partida* (2005) 37 Cal.4th 428 [35 Cal.Rptr.3d 644, 122 P.3d 765] to rebut the point: "If the trial objection fairly informs the court of the analysis it is asked to undertake, no purpose is served by formalistically requiring the party also to state every possible legal consequence of error merely to preserve a claim on appeal that error in overruling the objection had that legal consequence." (*Id.* at p. 437.) He characterizes his objection as sufficient to trigger the constitutional argument even though no mention of constitutionality was ever made. He deems the reference to cross-examination synonymous with the Sixth Amendment protection although that provision has both cross-examination and confrontation characteristics. Thus, he contends, the mention of cross-examination was sufficient, considering the broadened approach expressed in *Partida.*

In *Partida,* the defendant objected at trial to evidence concerning his gang affiliation and characteristics as being more prejudicial than probative. No mention was made that admission of such evidence would deny him due process of law. On appeal, he argued that the court erred in overruling his objection *and* that the error had the *consequence* of violating his due process rights. Neither of *those* arguments was waived. (*People v. Partida, supra,* 37 Cal.4th at p. 435.) But the objection failed to preserve the argument that due process required the statement's exclusion. (*Ibid.*)

*Partida* has not "broadened" the general rule requiring a timely and specific objection to evidence. (See Evid. Code, § 353, subd. (a).) To the contrary, the *Partida* court reiterated that "a trial objection must fairly state the specific reason *or reasons* the defendant believes the evidence should be excluded. If the trial court overrules the objection, the defendant may argue on appeal that the court should have excluded the evidence for a reason asserted at trial. *A defendant may not argue on appeal that the court should have excluded the evidence for a reason not asserted at trial.* A defendant may, however, argue [on appeal] that the asserted error in overruling the trial objection had the legal *consequence* of violating due process." (*People v. Partida, supra,* 37 Cal.4th at 431, italics added.) Thus, if anything, the *Partida* court has strengthened application of the statutory rule but simultaneously clarified how the restricted evidentiary argument may yield *other*

appellate arguments. Nonetheless, "he may not argue that the court should have excluded the evidence for a reason different from his trial objection. If he had believed at trial, for example, that the trial court should engage in some sort of due process analysis that was different from the Evidence Code section 352 analysis, he could have, and should have, made this clear as part of his trial objection. He did not do so. Accordingly, he may not argue on appeal that due process required exclusion of the evidence for reasons other than those articulated in his Evidence Code section 352 argument." (*Id.* at p. 435.)

■ Likewise, Chaney cannot now argue the trial court denied him his Sixth Amendment right to confront all witnesses as held in *Crawford.* (See *People v. Sanders* (1995) 11 Cal.4th 475, 512, fn. 4 [46 Cal.Rptr.2d 751, 905 P.2d 420].) A *Crawford* analysis is distinctly different than that of a generalized hearsay problem. *Crawford* established that the Sixth Amendment bars the "admission of testimonial statements of a [declarant] who [does] not appear at trial *unless* he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Crawford v. Washington, supra,* 541 U.S. at pp. 53–54, italics added.) That rule was further clarified in *Davis v. Washington, supra,* 547 U.S. 813 [126 S.Ct. 2266] when the court held that " 'testimonial statements' " are only those statements that cause the declarant to be a witness within the meaning of the Sixth Amendment, such as statements in response to police interrogations designed to elicit evidence to convict a defendant of a crime. (*Davis v. Washington,* at pp. 821–824 [126 S.Ct. at pp. 2273–2274].)

For instance, in the consolidated case with *Davis,* Amy Hammon was forced to sign an affidavit charging her husband with domestic violence and that affidavit was used to convict him on the charge at trial after she refused to testify. Such an out-of-court statement, obtained by the police specifically for the purpose of criminal prosecution, constitutes the testimonial evidence requiring the constitutional protection of cross-examination and confrontation. Statements are *not* testimonial, however, "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." (*Davis v. Washington, supra,* 547 U.S. at p. 822 [126 S.Ct. at p. 2273].)

■ The constitutional considerations involved in a confrontation clause issue require far more of a trial court's determination than merely deciding if cross-examination has been met or will be possible. As the purpose of Evidence Code section 353 is to provide the trial court and any moving party the opportunity to meet and cure any defect to which an objection has been made (*People v. Carrillo* (2004) 119 Cal.App.4th 94, 101 [13 Cal.Rptr.3d

878]), Chaney has failed to comply with that statutory requirement, and the issue is therefore waived for appellate review.

Fearing we will reject his argument due to the defective objection, Chaney proposes that he will bring a petition for habeas corpus alleging his trial counsel ineffectively represented him by failing to voice the proper ground. Such a procedure, he complains, will be a "waste of precious judicial resources and taxpayer dollars . . ." when the argument is already sufficiently preserved for review.

To forestall that process, we choose to address the issue on its merits even though it was waived by failure to specifically object. The argument, however, fails to persuade us in this instance. The questions posed to Lopez by Colegrove were asked to determine the *exact nature* of the emergency. The officers had approached the apartment to serve an arrest warrant, and they were met with a screaming, hysterical group of people who were wild and incomprehensible even after Chaney had fled. Colegrove's inquiry was not directed to the simple task of serving the warrant; it was directed at determining what had happened, what *might* happen in the next few minutes, and the nature of the emergency involved. As such, Lopez's answers fell under the *Davis* definition of nontestimonial statements, as distinct from testimonial statements as defined in the companion case of *Hammon*. (See *Davis v. Washington, supra,* 547 U.S. at pp. 819–833 [126 S.Ct. at pp. 2272–2279]; see also *People v. Salinas* (2007) 146 Cal.App.4th 958, 961–962 [53 Cal.Rptr.3d 302] [no *Crawford* violation when criminalist testified, based on another criminalist's report, that substance contained methamphetamine, because that report was nontestimonial in nature].)

## 2. Discretionary Abuse*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## B.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 772.

## III

## DISPOSITION

The judgment is affirmed sending Chaney to prison for two indeterminate life terms after serving 10 years.

O'Leary, J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 27, 2007, S152204.