Filed 3/21/13  P. v. Williams CA1/2
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DAMON D. WILLIAMS,<br><br>      Defendant and Appellant. | A132601<br><br>(Alameda County<br>Super. Ct. No. H47926) |

## I.  INTRODUCTION

Defendant was convicted of the following crimes against the following victims: (1) Shannon Doe:  forcible penetration by a foreign object (Pen. Code § 289, subd.(a)(1)),[1] three counts of forcible rape (§ 261, subd. (a)(2)), and two counts of forcible oral copulation (§ 288a, subd. (c)(2)); (2) Barbara Doe:  forcible rape (§ 261, subd. (a)(2)), and forcible sodomy (§ 286, subd. (c)(2)); (3) Cecilia Doe: forcible rape (§ 261, subd. (a)(2)); and (4) N. Doe: assault with intent to commit a sex crime (§ 220, subd. (a)).

On appeal, he argues that the trial court erred because (1) it failed to give sua sponte a unanimity instruction on one of the counts involving Shannon Doe; (2) it did not instruct the jury sua sponte on the meaning of "consent"; (3) it failed to instruct sua sponte on simple assault as a lesser included offense of rape with regard to Cecilia Doe; (4) it failed to instruct sua sponte on simple assault as a lesser included offense of assault

_____

[1] All further statutory references are to the Penal Code unless otherwise noted.

1

with intent to commit rape with regard to N. Doe; and (5) it erred in admitting testimony from the nurse who conducted Cecilia Doe's sexual assault examination.

Finding no error, we affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A.    *Shannon Doe*

The first of multiple sexual assaults committed by defendant occurred on February 23, 2008 against Shannon Doe.

After an argument with her wife on February 23, 2008, Shannon went on a "prolonged walk." Around 3:00 a.m., she decided to return home. As she made her way home, defendant grabbed her from behind. Shannon struggled with defendant and, during the struggle, defendant attempted to remove her belt and clothing. Throughout the struggle, defendant choked her and threatened to stab her. Shannon feared for her life and she stopped struggling. Defendant then sexually assaulted her. At trial, Shannon testified to three consecutive vaginal penetrations, followed by two forcible oral copulations. She testified that defendant first penetrated her vaginally and then penetrated her a second time. Defendant paused briefly to masturbate himself and then penetrated Shannon a third time. Following these three acts of vaginal penetration, defendant twice forced Shannon to orally copulate him.

Once defendant completed his sexual assault of Shannon, he allowed her to get dressed and Shannon walked away toward some nearby residences. At a nearby house, Irma Chavez lent her phone to Shannon to call the police. Chavez testified that Shannon came to her house "early morning" saying that she had just been raped.

Later, Shannon realized that defendant had kept her cell phone and wallet. On December 10, 2008, Inspector Michael Woods recovered Shannon's cell phone and driver's license from defendant's residence. In court, Shannon identified defendant as her attacker.

Josh Luftig, a physician assistant who works in the Highland Hospital emergency room as part of the Sexual Assault Response Team (SART), performed Shannon's sexual assault examination. He testified that Shannon sustained bruising and trauma to her

2

knees, elbows, head, and neck. He testified that she also sustained vaginal trauma and bruising, both of which were evidence of sexual assault. In addition to the three rapes and two forcible oral copulations, Shannon told him that she was digitally penetrated in her anus twice and that her assailant "used fingers before each penile insertion." Luftig's examination of her confirmed this as he found abrasions in her rectum. He testified that the results of his examination were consistent with Shannon's account of the incident.

**B.** *Barbara Doe*

Barbara testified that, at about 3:30 a.m. on October 8, 2008, she went to a Valero station in Hayward in order to use the bathroom and then across the street to a liquor store in order to charge her phone using an outlet outside the store. She then walked back to Schaffer Park, a few blocks away to return to the bench where she had been sleeping.

She was ready to leave, so she picked up her bag. As she did so, a man came up behind her, grabbed her and threw her down on the ground. The man forced her to her knees and pulled her head back by grabbing her hair. As he did so, he said, "Do you feel me? Do you feel this? . . . [¶] . . . If you don't , keep your fucken mouth shut. I'll kill you." She felt something against the side of her face. The man had a small pistol in his hand, which he was "cramming" into the side of her head "at full force." She was frightened. She fought back against the man "for a long time" as he tried to force her onto the bench. The man had his hands around her neck and was choking her. She thought she was dying.

During the struggle, the man removed her clothes and vaginally and then anally raped her. She could see that her assailant was African-American, but was otherwise unable to identify him. After the attack, she ran to a friend, who helped her contact the police. The police located a used and moist condom about five feet from the bench where she was attacked. Forensic testing was conducted on the condom and resulted in the discovery of Barbara's DNA as the "major profile." The "minor profile" from this forensic testing matched defendant's DNA.

**3.** *Cecilia Doe*

Cecilia testified that, at about 4:00 a.m. on October 20, 2008, she asked defendant, who was standing "in front of [some] apartments" in Hayward, if she could use the bathroom. Cecilia had seen defendant before, hanging out at a liquor store in the area. Defendant responded "over there," and Cecilia went down to the side of the building and urinated on the pavement. When she was finished, she pulled up and buttoned the pants she was wearing.

Defendant approached her and told her to "bend over." Cecilia complied, although she did not wish to have sex with defendant. She did so because she was "scared." She testified that defendant threatened to kill her and she was afraid she was going to be hurt. Defendant, using a condom, put his penis into her vagina. Cecilia told defendant to stop. He continued to assault her for another five minutes. After he ejaculated, defendant threw the condom "in the driveway."

Half an hour later, Cecilia reported the attack to the police. The police took her to the hospital for an examination. Cecilia testified that she was hurting and "all bruised up."

Cecilia, who is schizophrenic, a disease for which she takes medication including the morning before her court appearance, testified that at the time of the attack she was under the influence of methamphetamine. She had in the past, and occasionally still does, exchange sex for money and for drugs. The attack by defendant was not of this nature. In the past, defendant had helped her obtain drugs.

Patricia Meyer, a nurse practitioner who worked in the emergency department of Highland Hospital in Alameda County, examined Cecilia on October 20, 2008. During the course of this sexual assault examination, Cecilia told Meyer that she had had sexual intercourse as well as oral sex within the last five days. She specified October 19, 2008 as the date of this sexual activity. Meyer examined Cecilia's head, neck and mouth and found no injury or bruising. She did not examine Cecilia for injuries to the buttocks, anus and rectum because "there was no indication that there had been any attempt to contact . . . that area." Meyer's examination of Cecilia's external genitalia revealed

4

redness, bruising, areas of tenderness and tears in the skin. Cecilia herself was calm and emotionless. Cecilia declined to allow Meyer to conduct an internal vaginal examination with either a speculum or through a procedure in which dye was inserted into her vagina. She also declined to have photographs taken of her external genitalia. Meyer collected on oral swab and two vaginal swabs to determine whether any sperm was present in Cecilia's vagina. She also noted that Cecilia reported to her that her assailant used a condom when he raped her. In such an instance, if the condom does not tear, no sperm would be found when the swabs are tested. Meyer concluded that the injuries to Cecilia were consistent with her account of the rape.

Semen was recovered from the scene of the assault and, when tested, revealed a single source DNA profile which matched defendant's, a profile that occurred in one of 1.161 quadrillion African Americans.

## C.    *N. Doe*

Early in the morning of October 28, 2008, N., who had just gotten off work walked to the Mi Cocina Restaurant in Hayward to get something to eat. Finding that the restaurant wasn't open, she sat down in front of the restaurant. She heard some noises in the bushes near where she was sitting, turned and saw defendant. He asked her for a light or a cigarette. He came up behind her, threw her sweatshirt over her face, and choked her. She fought back. He put a gun in her mouth, and as she fought back, the gun came out and "went flying." She kicked the gun away. When asked why she kicked the gun away, she responded "Why would I want a gun sitting next to me after I popped it out of my mouth? So he can pick it up again and hurt me again with it?"

The defendant grabbed her on the hips and the back of her pants. During the struggle the defendant also bit her on the lower back. Two of her friends approached during the struggle and when he saw them defendant got up from his knees.

One of the friends testified that he saw "a male gentleman on top of [N.] and he had his hand over her mouth," the man was "straddled on top" of N. After the man got up, the witness saw that N. "had her pants down, her shoes and socks were off, her top was pulled over her head." Another friend also saw defendant on top of N., who was on

the ground, with her shirt over her head.  One of her friends asked defendant what he was doing.  Defendant told her friend to "back up, back away from him."  Defendant, who had the gun in his hand at this point, aimed it at the friend and then ran away.  That evening, after defendant was detained, N. identified him as her attacker.

With regard to Shannon, defendant was convicted of one count of forcible penetration by a foreign object, three counts of forcible rape, and two counts of forcible oral copulation.  As to the crimes against Barbara, defendant was convicted of forcible rape and forcible sodomy.  Defendant was also convicted of forcible rape of Cecilia and assault with intent to commit a sex crime against N.

This timely appeal followed.

## II.  DISCUSSION

### A.    *Unanimity Instruction*

With regard to Shannon Doe, defendant was convicted of one count of forcible penetration by a foreign object (count 1), three counts of forcible rape (counts 2-4), and two counts of forcible oral copulation (counts 5-6).  Defendant now argues that the trial court's failure to give the jury a unanimity instruction deprived him of his constitutional right to a unanimous verdict as to count 1.  He argues that because there was evidence of two digital anal penetrations and three digital vaginal penetrations, a unanimity instruction was required in order to ensure that the jury based its conviction upon the same discrete act.  We disagree.

We review a claim of instructional error de novo.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 581; *People v. Waidla* (2000) 22 Cal.4th 690, 733.)  In a criminal case, a jury verdict must be unanimous.  (*People v. Collins* (1976) 17 Cal.3d 687, 693.)  The jury must agree unanimously that the defendant is guilty of a *specific* crime.  (*People v. Diedrich* (1982) 31 Cal. 3d 263, 281.)  "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act."  (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)  "The [unanimity] instruction is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a

6

reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count." (*People v. Deletto* (1983) 147 Cal.App.3d 458, 472.)

However, an exception to this general rule exists "where a series of acts form part of one and the same transaction, and as a whole constitute but one and the same offense." (*People v. Masten* (1982) 137 Cal.App.3d 579, 588, disapproved on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8; *People v. Mota* (1981) 115 Cal.App.3d 227, 231-234 (*Mota*).) This applies especially "when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them." (*People v. Stankewitz* (1990) 51 Cal.3d 72, 100.) Because the acts consist of a continuous course of conduct, the prosecutor is not required to elect which individual act should constitute the basis of the crime. (*People v. Diedrich*, *supra*, 31 Cal.3d at pp. 281-282.)

Here, defendant's assault of Shannon was part of a continuous course of conduct in which each of the acts in the sexual assault were committed by defendant in the course of the continuing sexual assault against Shannon. The entirety of the assault occurred on a pedestrian walkway. The assaultive acts occurred one after the other, with no breaks in between. Therefore, despite the physical distinction between the anal and vaginal digital penetrations, it is highly unlikely that the jury would have found that only one type or instance of these assaultive acts occurred without also concluding that the others also took place. In addition, defendant's counsel did not challenge Shannon's account of the continuing sexual assault during the trial and, in fact, found her testimony to be credible. If defendant's counsel found Shannon to be credible, then it is reasonable to assume that the jury did as well.

*People v. Champion* (1995) 9 Cal.4th 879, 932 (*Champion*), overruled on other grounds in *People v. Combs* (2004) 34 Cal.4th 821, 860, supports this conclusion. In *Champion*, the rape victim testified that the defendant raped her twice. Both rapes were virtually identical. (*Champion* at p. 932.) Defendant did not offer evidence showing that he only committed one of the rapes. Instead his defense was that he did not participate in

7

the crimes. (*Ibid.*) The *Champion* court held that "once a juror determined that defendant Ross committed one of the two rapes, it is inconceivable that the juror would not also conclude that Ross also committed the second rape of the same victim." (*Ibid.*) The court concluded that neither the evidence nor the defense theories presented would have offered the jurors a reasonable basis in which to disagree on which act the defendant committed and still convict him of the crime. (*Ibid.*) " ' "A unanimity instruction is required only if the jurors could otherwise disagree which act a defendant committed and yet convict him of the crime charged." [Citation.] "[W]here the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the instruction is not necessary to the jury's understanding of the case." ' ") (*Ibid.*)

Here, as in *Champion*, the two types and instances of digital penetrations were substantially similar. The jury found Shannon and Luftig credible and defendant's counsel himself said that Shannon was a credible witness. Thus, it is inconceivable that the jury would have found that one type or instance of digital penetration occurred but not the other**s**. Therefore, a unanimity instruction was not necessary.

Additionally, *Mota*, *supra*, 115 Cal.App.3d 227 supports our conclusion. In *Mota*, the victim was kidnapped and repeatedly raped over the course of two hours, at two separate locations. (*Id.* at p. 230.) The trial court denied Mota's motion to force the prosecution to elect which act constituted the basis of the sexual assault charge. (*Id.* at p. 231.) Mota appealed and the court found that "[n]umerous cases hold that the prosecution need not inform 'the defense as to which specific offense it [intends] to rely upon for a conviction [where] the indictment [charges] but one offense and the evidence [tends] to prove two or more separate and distinct acts, either one of which would have supported the charge of rape, where the acts complained of were perpetrated on the same occasion and within a few minutes of each other, and constituted one continuous felonious act.' " (*Id.* at p. 233.) Thus, the court held that because the acts constituted a continuous course of conduct, no election was required. (*Ibid.*)

Here, as in *Mota*, the victim was assaulted multiple times during the course of a single episode. Defendant assaulted Shannon both anally and vaginally and her SART report also evidenced multiple digital penetrations of her anus and vagina. These acts occurred uninterrupted, at the same location, over the continuous course of a few hours. Because the sexual assault against Shannon involved substantially similar types and instances of digital penetrations that were part of a continuing course of conduct, the trial court was not required to give a unanimity instruction.

Citing *People v. Madden* (1981) 116 Cal.App.3d 212 (*Madden*), defendant argues that his actions did not constitute a continuous course of conduct. *Madden* is inapposite. In that case, the defendant was charged with one count of forcible oral copulation but the prosecution presented evidence of multiple acts of forcible oral copulation; and the court found that a unanimity instruction was required. (*Id.* at pp. 214-215.) However, the opinion in *Madden* is unclear regarding the factual circumstances surrounding the forcible oral copulations. The court states that they "occurred within a relatively short time span," but it is unclear as to whether that "short time" spans hours, days, or weeks. (*Id.* at p. 214.) Here, it is clear that the multiple penetrations occurred over the course of a few hours and were part of a continuous sexual assault. Additionally, *Madden* was decided before our Supreme Court held that a unanimity instruction is not required where the acts are so substantially similar that if the jury believed one act occurred, they would have also believe the other act occurred.

However, even if a unanimity instruction was required, the failure to give such an instruction was harmless error under either *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) or *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).[2] Shannon testified to three forcible rapes and two forcible oral copulations. Defense counsel did not question Shannon's credibility regarding the incident; in fact, he said that she was

---

[2] There is currently a split in authority regarding which harmless-error standard to use for the failure to give a unanimity instruction. (*People v. Matute* (2002) 103 Cal.App.4th 1437, 1448-1449.)

9

very credible. Further, the sexual-assault examiner testified that defendant digitally penetrated Shannon anally as well as vaginally. There was no reason for the jury to doubt Shannon or Luftig's testimony. Given the strength and credibility of Shannon and Luftig's testimony, it is highly unlikely that the jury would have found that one type or instance of digital penetration occurred but not the others. Thus, we find that even if there was an instructional error, it was harmless under either *Watson* or *Chapman*.

**B.** *Consent Instruction*

The jury was instructed on the elements of forcible penetration by a foreign object, forcible rape and forcible sodomy. Specifically, the court instructed the jury that the People were required to prove: "One, the defendant had sexual intercourse with a woman; two, he and the woman were not married to each other at the time of the intercourse; three, the woman did not consent to the intercourse; and four, the defendant accomplished the intercourse by force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else." The court also instructed the jury more specifically on the meaning of "force," "duress," "retribution," "menace," and "fear." The court gave similar instructions with regard to forcible penetration by a foreign object and forcible sodomy.

Neither the defense nor the prosecution requested an instruction specifically defining consent.[3] Defendant now argues that the trial court erred because it did not instruct the jury sua sponte on the definition of consent and in so doing, violated his Fifth, Sixth, and Fourteenth Amendment rights.

The trial court is required to give sua sponte instructions only " ' " 'on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected

_____

[3] Section 261.1 provides that in prosecutions for sexual assault "in which consent is an issue, 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved."

10

with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation.]" ' [Citation.]" (*People v. Kimble* (1988) 44 Cal.3d 480, 503.)

Here, the trial court gave the jury correct instructions on the "general principles of law" regarding the crimes with which defendant was charged, including the requirement that the victim did not consent to these crimes. [4] Cecilia testified that she did not want to have sex with the defendant, and did so because he threatened to kill her and she was afraid she was going to be hurt. She told defendant to stop and he did not. The physical evidence corroborates Cecilia's testimony of forcible rape. The sexual assault examiner observed that her external genitalia were red and bruised and that there was tenderness and tearing in the skin. The examiner concluded that the injuries to Cecilia were consistent with Cecilia's account of the rape. In closing argument, however, defense counsel speculated that Cecilia might have consented to having sex with defendant. He pointed out that Cecilia approached defendant to ask to use the bathroom, that she had a prior relationship with defendant involving drugs, that she had traded sex for drugs and that she told defendant to "stop" 20-25 minutes after the assault began and speculated that, therefore, she had consented to the assault. This speculative argument does not amount to substantial evidence of a lack of consent and, therefore, defendant was not entitled to a sua sponte consent instruction.

However, even if the trial court was required to instruct sua sponte on the definition of consent, it was not "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra,* 46 Cal.2d at p. 836.) The evidence that Cecilia did not consent to have sexual intercourse with defendant was strong. Defendant's very broad suggestion that a woman who had in

---

[4] The issue of whether Shannon and Barbara consented was not raised by the evidence. Defense counsel essentially conceded that Shannon and Barbara, who both testified that they did not consent to the attacks, were credible witnesses. Instead, the defense concentrated on the possibility that Barbara had identified the wrong man, arguing that although the DNA collected after she was raped matched defendant's, "she did conflict a little bit on how she made that identification [of defendant]" because it took her "20 seconds looking at the photo lineup to make the identification."

11

the past traded sex for drugs and had obtained drugs from the defendant, and used the word "stop" sometime toward the end of a sexual assault, must therefore have consented to the assault was both unconvincing and did not raise an issue that would have required a specific instruction about the meaning of consent. Nor would the jury have reached a different conclusion about whether defendant was guilty of forcible rape had it before it a more specific definition of the word "consent."

## C.    *Lesser Included Offenses*

Defendant argues that the trial court erred when it did not, sua sponte, instruct on simple assault (§ 240) as a lesser included offense of rape with regard to Cecilia. He also argues that the trial court should have given the jury, sua sponte, an instruction that simple assault is a lesser included offense of assault with intent to commit a sex crime with regard to N. We disagree with both contentions.[5]

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] . . . ." That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present . . . but not when there is no evidence that the offense was less than that charged.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

To warrant an instruction on a lesser included offense, "there must be substantial evidence of the lesser included offense, that is 'evidence from which a rational trier of fact could find beyond a reasonable doubt' that the defendant committed the lesser offense. [Citation.] Speculation is insufficient to require the giving of an instruction on a

---

[5] Initially, however, we note that Cecilia and N. appear to be the only victims to which defendant's argument is directed. With regard to the other victims, to the extent defendant's argument encompasses these counts, we find that given the absence of substantial evidence that either Barbara or Shannon consented to these assaults or that defendant's conduct was not sexual, the trial court was not required to instruct sua sponte on assault as a lesser included count of any of the charges.

lesser included offense. [Citations.] In addition, a lesser included instruction need not be given when there is no evidence that the offense is less than that charged." (*People v. Mendoza* (2000) 24 Cal.4th 130, 174.)

With regard to Cecilia, defendant argues that there was substantial evidence that Cecilia consented to intercourse with him and, therefore, a simple assault instruction should have been given. The fact that Cecilia had, in the past, traded sex for drugs and that she had obtained at some point obtained drugs from defendant is not substantial evidence that, on this occasion she consented to intercourse with defendant. Nor is it the case that a woman's use of the "stop" 20 or 25 minutes into a rape is substantial evidence of consent. Further, even if there was consensual sex between Cecilia and defendant, there was no substantial evidence that defendant committed a crime against Cecilia that was not sexual in nature. To the contrary, Cecilia's injuries were to her genitalia and the sexual assault examiner who saw her after she reported the attack testified that these injuries were consistent with rape, not consensual sex. Accordingly, a simple assault instruction was not required.

In addition, even if the trial court erred, any such error was harmless under *Watson, supra,* 46 Cal.2d at page 836. (*Breverman, supra,* 19 Cal.4th at p. 178.) Even if the jury had been instructed on simple assault, there was no evidence, much less substantial evidence, that defendant's encounter with Cecilia could have involved consensual sex as well as simple assault.

With regard to N., defendant contends that the court should have instructed the jury on simple assault as a lesser included offense of assault with intent to commit a sex crime. However, there was no substantial evidence that defendant's attack on N. was with anything other than the intent to commit a sex crime. During his attack on N., defendant attempted to pull her pants off. A witness saw "a male gentleman on top of [N.] and he had his hand over her mouth," the man was "straddled on top" of N. After the man got up, the witness saw that N. "had her pants down, her shoes and socks off, her top was pulled over her head." Another witness also saw defendant on top of N., who was on the ground, with her shirt over her head. In contrast, there were no facts that even

13

so much as suggested that defendant's intent was not sexual.  Nor could there have been error of any kind, had such an instruction been merited.  The evidence that defendant intended to commit a sex crime was overwhelming and a jury would not instead have found him guilty of simple assault.

**D.**     *Admission of Testimony Regarding Statement to Sexual Assault Examiner*

Defendant argues that the trial court erred in admitting a portion of the testimony of Patricia Meyer, the nurse practitioner who conducted the sexual assault examination of Cecilia, regarding whether Cecilia told her that defendant had verbally threatened her. The relevant testimony is as follows:

"Prosecutor:  I'm not asking for what the words were, do you document whether or not there was a threat made?

"Mr. Broome:  Objection.  This is hearsay.  Calls for hearsay. . . .

"The Court:  Overruled.

"The Witness:  So there was a verbal threat made to her.

"Mr. Ford: That's all. . . ."

Defendant argues that the trial court erred in overruling his hearsay objection to Meyer's statement that defendant made a "verbal threat" to her.  He also contends that the court's admission of Meyer's testimony regarding Cecilia's statement violated his confrontation clause right.  We disagree.

First, the trial court did not abuse its discretion in overruling defendant's hearsay objection.  Meyer's testimony regarding her SART examination of Cecilia, an examination which occurred shortly after the sexual assault, was admissible under the hearsay exception for spontaneous or excited utterances set out in Evidence Code section 1240.  (*People v. Trimble* (1992) 5 Cal.App.4th 1225, 1235-1236.)

With regard to defendant's confrontation clause argument, defendant has waived this claim because he did not object on confrontation clause grounds to Meyer's testimony.  Nor did his hearsay objection preserve this issue for appellate review. (*People v. Chaney* (2007) 148 Cal.App.4th 772, 779 [confrontation clause analysis " 'distinctly different than that of a generalized hearsay problem.' "].)

14

Moreover, even if the trial court did err in admitting Meyer's testimony regarding Cecilia's "threat" statement, either because it did not fall within an exception to the hearsay rule or because it violated defendant's confrontation clause right, we find no prejudicial error because the admission of testimony that defendant made a "threat" to Cecilia was harmless under *Watson, supra,* 46 Cal.2d at page 836 and *Chapman, supra,* 386 U.S. at page 24. Meyer's physical examination of Cecilia separately corroborated Cecilia's account of the nonconsensual nature of the attack in that Cecilia's external genitalia revealed redness, bruising, areas of tenderness and tears in the skin. Meyer also concluded that the injuries to Cecilia were consistent with Cecilia's account of the rape. Thus, even without Meyer's testimony that Cecilia reported to her that defendant threatened her, the jury still had before it ample evidence that Cecilia did not consent to the assault.

## IV. DISPOSITION

The judgment is affirmed.


_____
Haerle, J.


We concur:


_____
Kline, P.J.


_____
Richman, J.


15