Filed 4/10/14  P. v. Daniels CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CEDRIC L. DANIELS II,<br><br>Defendant and Appellant. | F064237<br><br>(Super. Ct. No. 1401218)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Cedric Daniels II and Lovelle Mixon committed a home invasion robbery on February 21, 2009. While armed with handguns, they assaulted Tony Moushi and his mother, Suhila Hana, and stole jewelry and other items.

Appellant[1] was convicted after jury trial of first degree robbery (counts 1 and 2) and assault with a firearm (count 3). (Pen. Code,[2] §§ 212.5, subd. (a), 245, subd. (a)(1).) Special allegations that appellant personally used a firearm in connection with the robberies and personally inflicted great bodily injury in connection with the assault were found true. (§ 12022.53, subd. (b), 12022.7, subd. (a).) The court found two prior strike allegations to be true. (§ 667, subd. (d).) Appellant was sentenced to an aggregate term of 35 years to life imprisonment.

Appellant raises numerous claims of reversible error. He contests the sufficiency of the evidence supporting the great bodily injury enhancement and the prior strikes. He challenges limits that were placed on impeachment of certain witnesses and objects to the admission of certain hearsay evidence. He advances four claims of instructional error. Appellant asserts that use of juvenile adjudications as prior strikes infringes his constitutional jury trial right. Finally, he contends that the trial court abused its discretion by refusing to dismiss the prior strikes in the interests of justice. We are not persuaded by any of these arguments and will affirm the judgment.

---

[1] The parties stipulated that Lovelle Mixon died on March 21, 2009. On that date two Oakland police officers pulled Mixon over in a routine traffic stop. Mixon, who was on parole for assault with a deadly weapon, had a no-bail warrant out for his arrest because of a parole violation. Mixon opened fire on the officers, killing them both, and fled on foot. This sparked a manhunt that lasted two hours and ended with an exchange of gunfire that killed Mixon and two more police officers. (http://www.sfgate.com/bayarea/article/Family-s-account-of-Oakland-parolee-who-killed-3167584.php [last accessed on Feb. 14, 2014].) The jury was not given any information about the events surrounding Mixon's death.

[2] Unless otherwise specified all statutory references are to the Penal Code.

2.

## FACTS

In early 2009, Desiree Werner shared a home with Mixon, appellant and Johnny Walker, who is appellant's brother. Werner overheard appellant, Mixon and Walker planning to rob a home that they believed contained $100,000 in cash and jewelry. Werner saw appellant in possession of a small handgun during February 2009.

One day prior to February 21, 2009, Moushi saw appellant standing outside a cigarette store next to one of Moushi's friends. Moushi was wearing two necklaces, a diamond cross, a distinctive ring and a watch in a visible manner.

Around 8:45 p.m. on February 21, 2009, Hana returned home from work. She made a telephone call and then noticed that a man, subsequently identified as Mixon, was standing near her. Mixon pointed a handgun at Hana's head and pushed her to the ground.

Moushi walked into his mother's house. A man, subsequently identified as appellant, pointed a gun at him. Moushi told Hana to call the police. Mixon hit Hana with his gun and knocked the phone away from her.

Moushi lunged for appellant's gun and the two men struggled. Appellant pushed Moushi to the ground and pointed his gun at Moushi's chest. Appellant repeatedly kicked Moushi and hit him with the gun. Appellant told Moushi to cooperate and said, "I am going to shoot you. I am going to kill you." Appellant pulled the necklaces Moushi was wearing off his neck and took some money out of Moushi's pocket. He demanded to know where Moushi kept his "shit."

Mixon grabbed Hana by the hair and dragged her into the living room where Moushi and appellant were struggling. Mixon told Moushi to cooperate and hit Moushi with his gun butt.

3.

Appellant dragged Moushi into the bathroom.[3]  He told Moushi to cooperate and repeatedly hit him with the gun.  Mixon grabbed Hana and they entered the bathroom.  Mixon made Hana look at Moushi's face and said that he was going to cut it up unless Moushi cooperated.  Mixon was holding a knife at the time as well as a gun.  Mixon threatened to kill both Moushi and Hana if he did not get "what he came here for."  Appellant demanded to know where Moushi kept his belongings.  He took a watch, ring and earrings that Moushi was wearing.  Appellant sporadically left the bathroom and looked around the house.

Mixon shoved Hana into a bedroom.  Appellant searched Moushi's and Hana's bedrooms.  Moushi heard appellant talking to someone on the phone about the layout of the house and where "stuff was."

Hana was brought back into the bathroom.  Mixon and appellant debated whether or not they should kill Moushi and Hana.  They told Moushi that they were going to kill him.  Eventually Moushi and Hana realized that appellant and Mixon had left the house.  They drove to a relative's house and called the police.

Moushi suffered contusions and cuts from having been hit and stomped.  He required stitches on his left temple and medical staples on the back of his head to close wounds.  His injuries left scars.

During the robbery, appellant and Mixon stole, inter alia, a rifle, several pieces of jewelry and approximately $3,000.  The stolen jewelry consisted of yellow diamonds in the shape of a cross, chains, bracelets, a watch, a distinctive ring and earrings.

Werner saw Mixon, appellant and Walker return home during the evening of February 21, 2009.  The men were excited and talked among themselves about having robbed an "Arabian dude" and his mother.  Walker said to Mixon "that he should have hit

---

**3**    Moushi testified that appellant dragged him into the bathroom.  Hana testified that it was Mixon who dragged Moushi into the bathroom.

the dude harder with the gun." The shirt that Mixon was wearing and Mixon's handgun were covered in blood. Mixon carried a rifle, appellant carried a black bag, and Walker carried a small case containing a handgun. The black bag contained men's jewelry, which was dumped on a table. Werner looked at the jewelry. There were yellow diamonds, chains, necklaces, watches and a ring. The three men divided the jewelry among themselves. Werner looked at photographs of the jewelry that was stolen from Moushi and recognized several of the pieces.

Moushi and Hana identified appellant as one of the robbers at trial. Moushi identified appellant and Mixon in a photographic lineup. Hana identified Mixon in a photographic lineup, but did not identify appellant.

## DISCUSSION

### I. Challenges To Evidentiary Sufficiency.

Appellant challenges the sufficiency of the evidence supporting the true finding on the great bodily injury enhancement attached to count 3 (§ 12022.7, subd. (a)) and the true finding on the prior strike allegation that is based on his juvenile adjudication in 2004 for assault likely to produce great bodily injury. (§ 245, subd. (a).) Neither argument is convincing. As will be explained, the contested findings are supported by sufficient evidence.

#### A. Standard of review.

The same standard of review is applied to challenges to the sufficiency of the evidence supporting guilty verdicts on substantive counts and to true findings on enhancement allegations. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

> "When a defendant challenges the sufficiency of the evidence, '"[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.] 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that

5.

evidence.  [Citation.]'  [Citation.]  We ""'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'"  [Citation.]'  [Citation.]"  (*People v. Clark* (2011) 52 Cal.4th 856, 942-943.)

"…'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence' is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict.  [Citation.]"  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

"Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the [disputed] finding."  (*People Barnwell* (2007) 41 Cal.4th 1038, 1052.)

**B.	The great bodily injury enhancement is supported by substantial evidence.**

Section 12022.7, subdivision (a) imposes a three-year sentence enhancement when the defendant personally inflicts great bodily injury on any person other than the defendant's accomplice during the commission of a felony.  Determination whether great bodily injury has occurred is a question of fact for the jury to decide.  (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)  Subdivision (f) of section 12022.7 defines great bodily injury as "a significant or substantial physical injury."  Injury need not be permanent, prolonged or protracted.  (*Escobar, supra*, at p. 750.)  "Abrasions, lacerations, and bruising can constitute great bodily injury."  (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1042.)

Appellant argues that the record does not contain substantial evidence proving Moushi suffered significant physical injury within the meaning of section 12022.7.  He asserts that "one can only guess what the great bodily injury components might be" because "[t]here was no description of [Moushi's] injuries by any witness, no medical

6.

evidence and no indication from Moushi that he suffered any serious injury." Appellant's characterization of the state of the record is inaccurate.

Moushi testified appellant and Mixon beat him for 30 minutes. He was hit with a gun butt approximately 26 times. He was stomped. Photographic evidence documented wounds on the top and back of Moushi's head. A photograph showed his "head bleeding, [his] jaw real swollen, and some bruising around [his] cheeks." Moushi sought medical treatment for his injuries. A wound on his left temple was sutured and surgical staples were used to close a wound on the back of his head. Moushi showed the jury a scar from the cranial injuries. In addition, Hana testified that immediately after appellant and Mixon left the house, she hugged Moushi and observed that he was bleeding on the top of his head where he had been hit with the gun butt. This wound left a scar on his temple. Considered in its entirety this testimony and photographic evidence amply proves that Moushi suffered significant and substantial bodily injury. (*People v. Nitschmann* (1995) 35 Cal.App.4th 677, 680 [large gash and profuse bleeding]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 734 [contusions, lacerations and abrasions]; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836 [multiple contusions].)

**C.      There is substantial evidence supporting the true finding on the strike allegation based on the 2004 assault (§§ 245, subd. (a) & 12022.7).**

**1.      Facts.**

The first amended information alleged, in relevant part, that on or about September 20, 2004, appellant suffered a serious felony conviction within the meaning of section 1192.7, subdivision (c) and section 667, subdivision (d), for the crime of assault likely to produce great bodily injury with an enhancement for personally inflicting great bodily injury (§§ 245, subd. (a)(1), 12022.7).

During court trial of the enhancement allegations, the prosecutor[4] proved the 2004 assault conviction by proffering a copy of the reporter's transcript of appellant's September 20, 2004, jurisdictional hearing (Ex. 46.). During that hearing the juvenile court found that "the evidence has shown, beyond a reasonable doubt, that he did commit the offenses listed here [section] 245 (a)(1) and felony assault likely to produce great bodily injury. And, alternatively, a felony battery with serious bodily injury as well, too. [¶] So I do find the petition to be sustained in that regard. And find that the minor does come within the jurisdiction of the Court under section 602." The juvenile court also found that "the description of the injuries in this case is sufficient to follow within [section] 12022.7. So I believe there was a significant or substantial injury within the meaning of [section] 12022.7." Based on these findings the juvenile court found "the allegations to be true beyond a reasonable doubt then." Appellant was continued as a ward, placed on probation and detained in juvenile hall until his 18th birthday.

After reviewing the reporter's transcript (Ex. 46) the court made the following finding concerning the 2004 prior felony conviction allegation: "The [juvenile] Court made a finding that the Defendant committed the offenses listed as the [section] 245(a)(1), felony assault, and alternatively a felony battery with serious, bodily injury, and it sustained the petition. [¶]…[¶] [T]he [juvenile] Court said that the description of the injuries is sufficient to fall within [section] 12022.7." The court continued: "So [the] Court finds that there is sufficient evidence to find the [section] 245 (a)(1) prior with GBI under [section] 12022.7(a) to be true, and that the Defendant was the individual as to whom the petition was sustained." Based on this finding, the court found the prior strike allegation to be true beyond a reasonable doubt.

---

**4**    Although two deputy district attorneys appeared on behalf of the People at trial, the singular term "prosecutor" was used to avoid confusion and enhance readability.

## 2. There is sufficient proof that the assault was a felony.

Appellant challenges the true finding on the prior strike based on the 2004 assault, arguing this crime was a misdemeanor. He relies on the fact that the juvenile court placed him on probation. We are not convinced. As will be explained, there is ample evidence supporting the trial court's conclusion that the 2004 assault conviction was a felony offense.

"The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt." (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) Certified documents from the record of prior proceedings may be used to prove a prior conviction allegation. (*Id*. at p. 1082.) "[T]he trier of fact may draw *reasonable inferences* from the record presented." (*Id*. at p. 1083.) Unless the document is rebutted, "such a document, standing alone, is sufficient evidence of the facts it recites about the nature and circumstances of the prior conviction. [Citation.]" (*Ibid*.)

In this case, there is sufficient evidence supporting the trial court's determination that the 2004 assault conviction was a felony. During the September 20, 2004, jurisdictional hearing the juvenile judge specifically stated that the offense was a "felony assault likely to produce great bodily injury." The juvenile court also found that during the commission of this crime appellant caused significant and substantial injury within the meaning of section 12022.7. Section 12022.7 only applies to felonies. The juvenile court's actions were sufficient to constitute a declaration that the assault was a felony. (See *In re Manzy W*. (1997) 14 Cal.4th 1199, 1204.) Consequently, we uphold the true finding on this strike allegation.

9.

**II.    Challenges To Evidentiary Rulings.**

   **A.    Werner's testimony about conversations she overheard was properly admitted.**

   **1.    Facts.**

Appellant motioned in limine to preclude the prosecutor from eliciting testimony from Werner about conversations between Mixon, appellant and Walker that she overheard. He argued such testimony is inadmissible hearsay and excessively prejudicial pursuant to Evidence Code section 352.

Werner testified during an evidentiary hearing. She lived with Mixon, appellant and Walker for two to three weeks between January and March of 2009. During this time, she overheard two conversations between appellant, Mixon and Walker during which they planned a robbery. Mixon said, "[T]his dude had a lot of cash on him. He was supposed to have like a 100,000 in cash and a lot of jewelry." About a week after these conversations Werner saw appellant, Mixon and Walker enter the house. Mixon carried a rifle with a scope and stand. Appellant carried a black bag containing pieces of jewelry. Walker carried a black case containing a handgun. Appellant said "they had got, like, a lot of jewelry and there wasn't no cash, that they just got jewelry." Walker said "Mixon hit the dude over the head with the gun, and he said that he should have hit him harder." Werner heard Walker say that the victims were an "Arabian dude" and "[h]is mom."

The trial court ruled that statements made by appellant during these conversations were admissible as party admissions and statements made by Mixon and Walker were admissible as statements made by coconspirators. (Evid. Code, §§ 1220, 1223.) Walker's comment that Mixon should have hit the victim harder was offered for a non-hearsay purpose. The trial court did not explicitly rule on appellant's Evidence Code section 352 objection.

Werner's trial testimony was consistent with her testimony during the evidentiary hearing. At trial, Werner testified that she did not remember any specific statements made by appellant during the conservations before the robbery. About a week before the robbery Werner saw appellant in possession of a small gun. She also testified that when the three men came into the house together Mixon's shirt was bloodstained. Werner heard Walker say that "Mixon had hit the Arabian dude with the gun beside the head." Werner identified photographs of the stolen jewelry as being identical to pieces of jewelry that appellant, Mixon and Walker divided between them.

**2. Hearsay remarks attributed to Mixon and Walker are admissible as coconspirator statements**.

Generally, hearsay evidence is inadmissible unless an exception applies. (Evid. Code, § 1200.) Evidence Code section 1223 codifies the coconspirator exception to the hearsay rule. This section provides that evidence is not made inadmissible under the prohibition against hearsay if the challenged statement was "made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy" and was made "prior to or during the time that the party was participating in that conspiracy." (Evid. Code, § 1223, subds. (a), (b).) Only a prima facie case of conspiracy must be made to satisfy foundational requirements of this exception. (*People v. Jeffery* (1995) 37 Cal.App.4th 209, 215.) "California courts require that the existence of the conspiracy be established by evidence independent of the proffered declaration." (*People v. Herrera* (2000) 83 Cal.App.4th 46, 65, fn. omitted.)

A conspiracy is an agreement to commit a crime accompanied by an overt act in furtherance of the conspiracy. (*People v. Herrera, supra,* 83 Cal.App.4th at p. 64.) Once the existence of the conspiracy has been established, the proponent of the hearsay statement must present evidence proving "'that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt

11.

act "by one or more of the parties to such agreement" in furtherance of the conspiracy.' [Citations.]" (*People v. Jurado* (2006) 38 Cal.4th 72, 120.) The conspiracy may be shown by circumstantial evidence. One may infer the agreement from the defendants' conduct. (*People v. Jeffery, supra*, 37 Cal.App.4th at p. 215.)

Appellant contends the prosecution failed to establish a prima facie case that Walker was a coconspirator. Having carefully examined the record, we conclude that independent circumstantial evidence and reasonable inferences that may be drawn from it are sufficient to establish a prima facie case that Walker conspired with appellant and Mixon to commit the robbery. The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the participants before and during the alleged conspiracy. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1135.) The evidence shows that Walker entered the house together with appellant and Mixon on the same night that Moushi and his mother were robbed. All three men were excited and happy. Walker carried a black case that contained a gun. Mixon's shirt was bloodstained and he carried a rifle. Walker knew that Mixon hit Moushi over the head and that Moushi was "Arabian."[5] Appellant carried a bag containing distinctive jewelry. The jewelry was dumped on a table and divided among the three men. Werner later saw all three men wearing the same jewelry. From these facts, one may reasonably conclude that Walker was a participant in a conspiracy to commit robbery.

The evidence is also sufficient to support a finding that the conversations Werner overheard took place during the course of the conspiracy and were made in furtherance of the conspiracy's objective. The conversations that took place before the robbery were

---

[5] This testimony was not offered for the truth of the matter stated but to establish Mixon's state of mind. Walker's statement demonstrates he had guilty knowledge about an event that occurred during the robbery (i.e., Mixon hit Moushi).

12.

part of the planning process. The conversation after the robbery took place while the spoils of the crime were being divvied up.

In sum, the prerequisites necessary apply the coconspirators exception to remarks made by Mixon and Walker were satisfied. (Evid. Code, § 1223.) Remarks attributed to appellant during these conversations are admissible as party admissions.[6] (Evid. Code, § 1220.) For these reasons, the trial court properly admitted this evidence under state law.

Appellant's related due process claim is equally unpersuasive. "There was no error under state law, and we have long observed that, '[a]s a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [state or federal constitutional] right to present a defense.' [Citation.]" (*People v. Robinson* (2005) 37 Cal.4th 592, 626-627.) Consequently, we find that the challenged ruling did not infringe appellant's constitutional rights to due process of law or to present a defense.

**B.     The court did not err by limiting impeachment of Werner.**

**1.     Facts.**

Werner worked as a prostitute before and after the robbery. Mixon was her pimp around the time that the robbery occurred. Werner has several misdemeanor convictions and was in custody when she approached a police officer with information about the robbery.

During the hearing on in limine motions defense counsel stated that he intended to impeach Werner with her criminal history. The People offered to stipulate to the following: "Ms. Werner, before, during and after the current event was employed as a prostitute." Defense counsel declined the stipulation.

---

**6**     Appellant did not dispute the portion of the trial court's ruling that remarks he made during the conversations were admissible as party admissions.

The court appointed counsel for Werner to advise her about her constitutional rights. After consulting with Werner, her counsel stated that Werner had two misdemeanor theft convictions, two misdemeanor prostitution convictions and "many prostitution related charges over the past year that look like they were dropped by the Las Vegas authorities, but obviously she's … potentially on the hook for those." Werner has not suffered any felony convictions. Werner's counsel informed the court that he advised Werner to assert her constitutional protection against self-incrimination with respect to her criminal history.

Defense counsel said, "As to invoking a Fifth Amendment right, if she is going to testify, then she is going to testify. If she is going to invoke her Fifth Amendment right, then she is not going to testify." The prosecutor argued that Werner was only invoking her constitutional protection on a "collateral issue" and therefore could testify.

An evidentiary hearing was held. Werner invoked her constitutional protection against self-incrimination as to any criminal activity after August 10, 2010. Through her counsel, she agreed to testify about "criminal activities of a misdemeanor nature prior to that date."

Defense counsel argued Werner's testimony should be excluded pursuant to Evidence Code section 352. He argued: "Ms. Werner's testimony is highly inflammatory. I don't believe that it is probative beyond that prejudicial effect that would be created by the Court allowing her to testify regardless of whether or not the Court's going to allow me to cross-examine her on her lengthy criminal record."

Werner's counsel stated that, based on his research, Werner could invoke her protection against self-incrimination as to current criminal conduct and still testify.

The court ruled that Werner's testimony was admissible. It reasoned that Werner's criminal history was a collateral matter. It allowed questions about the underlying criminal misconduct involved in her past convictions for theft and prostitution. Counsel could not inquire about pending cases.

14.

On direct examination Werner testified that during 2009 she worked as a prostitute. She admitted prior acts of prostitution and attempting to possess a stolen vehicle. Werner testified that she did not receive any benefits from the prosecution in exchange for her testimony. The District Attorney's office provided Werner with travel costs, food, lodging and clothing for her court appearance.

### 2. Discretion was not abused.

Appellant contends the trial court abused its discretion by allowing Werner to testify after it refused to allow appellant to impeach her with prior misdemeanor convictions and charges that were pending in Nevada. We are not convinced.

Admission of misconduct that only amounts to a misdemeanor is subject to the court's broad grant of authority under Evidence Code section 352. "[I]f past criminal conduct amounting to a misdemeanor has some logical bearing upon the veracity of a witness in a criminal proceeding, that conduct is admissible, subject to the trial court's discretion, as 'relevant' evidence .…" (*People v. Wheeler* (1992) 4 Cal.4th 284, 295.)

> "When exercising its discretion under Evidence Code section 352, a court must always take into account, as applicable, those factors traditionally deemed pertinent in this area. [Citations.] But additional considerations may apply when evidence other than felony convictions is offered for impeachment. In general, a misdemeanor—or any other conduct not amounting to a felony—is a less forceful indicator of immoral character or dishonesty than is a felony. Moreover, impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (*People v. Wheeler, supra,* 4 Cal.4th at pp. 296-297, fn. omitted.)

"'A trial court's exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. [Citation.] In other words, discretion is abused only if the court exceeds the bounds of reason, all of

the circumstances being considered. [Citation.]' [Citation.]" (*People v. Kwolek* (1995) 40 Cal.App.4th 1521, 1533.)

Appellant argues that he was entitled to inquire about Werner's pending prostitution charges in Nevada to determine if she was receiving lenity in those cases in exchange for her trial testimony. This factual question was resolved during the pretrial evidentiary hearing. The prosecutor stated for the record that Werner was not receiving any benefit from her cooperation with the prosecution and no deals had been made with any witness. Appellant did not make an offer of proof contradicting the prosecutor's averment. Appellant did not proffer any evidence indicating that Werner was, in fact, receiving a benefit from the prosecutor with respect to her pending charges. Appellant's failure to make such an offer of proof precludes review of this factual issue on appeal. (*People v. Eid* (1994) 31 Cal.App.4th 114, 126.)

During trial, Werner testified that she engaged in prostitution before and after the robbery. She admitted attempting to possess a stolen vehicle.

Having considered the entirety of the circumstances we conclude that the challenged evidentiary ruling fell well within the trial court's broad discretionary authority. Additional testimony showing that Werner's misconduct resulted in misdemeanor convictions for prostitution and theft and pending prostitution charges in Nevada would not have significantly affected the jury's perception of her credibility. They already knew Werner was a prostitute and a thief. Abuse of discretion has not been shown.

Since there was no state law error, we also reject appellant's related assertion that the challenged ruling infringed her constitutional rights to due process and to present a defense. "'[A]s a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's [state or federal constitutional] right to present a defense.' [Citation.]" (*People v. Robinson, supra,* 37 Cal.4th at pp. 626-627.)

16.

**C.     The court did not err by limiting impeachment of Moushi.**

**1.     The firearm conviction was not a crime of moral turpitude.**

Moushi suffered a felony conviction for violating former section 12031, subdivision (a)(2)(F). The trial court ruled that this offense was not a crime of moral turpitude and prohibited appellant from impeaching Moushi with this conviction.

Appellant argues that former section 12031, subdivision (a)(2)(F) is a crime of moral turpitude and the trial court erred by concluding it was not. We are not persuaded.

Former section 12031, subdivision (a)(2) may be violated in a variety of circumstances. Common to all violations of this section is the element of carrying a loaded firearm on the person or in a vehicle in any public place or upon any public street. Subdivision (a)(2)(F) prohibits the act of carrying a concealable firearm when the person is not listed with the Department of Justice as the gun's registered owner. (Former § 12031, subd. (a)(2)(F).)

A witness in a criminal trial may be impeached with a prior felony conviction only if the least adjudicated elements of that felony necessarily involve moral turpitude. (*People v. Castro* (1985) 38 Cal.3d 301, 317.) A crime of moral turpitude is an offense that reveals a person's dishonesty, general readiness to do evil, bad character, or moral depravity. (*People v. Bautista* (1990) 217 Cal.App.3d 1, 5.) Moral turpitude must be reasonably inferable from the elements of the offense alone without regard to the facts of a particular circumstance. (*People v. White* (1992) 4 Cal.App.4th 1299, 1303.)

Appellant relies on *People v. Garrett* (1987) 195 Cal.App.3d 795, 799-800 (*Garrett*) in support of his contention that former section 12031, subdivision (a)(2)(F) is a crime of moral turpitude. In *Garrett*, the defendant unsuccessfully argued that the trial court erred when it permitted him to be impeached with a felony conviction for conspiracy to possess an illegal weapon in violation of 18 United States Code section 371 and 26 United States Code section 5861(d). These federal statutes required proof that the defendant and another agreed to possess unregistered firearms and one of them

17.

committed an overt act in furtherance of this agreement. The *Garrett* court found these federal offenses were crimes of moral turpitude because "firearm" as defined in 26 United States Code section 5845 included various modified or altered guns, such as a modified shotgun, a machine gun and a grenade. That statute is directed at weapons of crime, violence and destruction that are normally used for criminal purposes. The statute excludes weapons that are commonly possessed for innocent purposes. Since these weapons are generally used for criminal acts, mere possession of them indicates a readiness to do evil. (*People v. Garrett, supra,* 195 Cal.App.3d at pp. 798-800.)[7]

*Garrett* is readily distinguishable from the matter before us. The least adjudicated elements of a violation of former section 12031, subdivision (a)(2)(F) consist of carrying a concealable loaded pistol, revolver or other firearm on your person or in a vehicle in a public place when you are not listed with the Department of Justice as the registered owner of the firearm. Unlike *Garrett*, former section 12031, subdivision (a)(2)(F) did not involve possession of weapons that are generally only used by criminals. The firearms encompassed by former section 12031 can be carried for self-defense and not for a criminal purpose. We reject appellant's assertion that the firearm at issue here is "illegal." Violation of former section 12031, subdivision (a)(2)(F) does not require that the firearm be unregistered; it is only required that the defendant is not the registered owner of the firearm. The gun at issue in this case was not unregistered. For these reasons, we uphold the trial court's determination appellant's conviction for violating former section 12031, subdivision (a)(2)(F) is not a crime of moral turpitude.

---

[7] Case law also holds that possession of a firearm by a felon and possession of an assault weapon are crimes of moral turpitude. (*People v. Robinson* (2011) 199 Cal.App.4th 707, 712-715; *People v. Gabriel* (2012) 206 Cal.App.4th 450, 456-458.)

### 2. The dismissed marijuana offense is not a felony conviction.

#### a. Facts.

During the in limine hearing the court asked the prosecutor if Moushi's marijuana offense was a "prior felony conviction?" The prosecutor replied, "That is not a conviction.... He's on DJ for a personal use of cultivating marijuana." (Health & Saf. Code, § 11358.) The court ruled that the marijuana offense was not an impeachable offense because it was not a crime of moral turpitude.

During a subsequent proceeding the prosecutor stated that on November 16, 2006, Moushi "was put into the DJ program for an 11358 of the Health and Safety Code for cultivation of marijuana for personal use." Once again, the court ruled that this was not a crime of moral turpitude and, therefore, was not an impeachable conviction. Defense counsel stated, "And I understand the Court's analysis. I would just for the record respectfully object." Defense counsel did not specify the basis of his objection.

The prosecutor stated during trial that he was approached by the deputy district attorney who was handling Moushi's marijuana case. The deputy district attorney asked the prosecutor in this case if he "had any concerns about Mr. Moushi's active case." The prosecutor reported that he told him "to handle it as he would any other case, that we have made no deals with Mr. Moushi, that Mr. Moushi's case should be handled independently of our case and that I affirmatively did not care what happened to Mr. Moushi's other criminal case."

During the tenth day of trial the court asked the prosecutor, "Where are we on his DJ case? I think that was never -- well, first of all, it was dismissed so it's not a conviction anymore, and it was never a crime of moral turpitude." Defense counsel explained that Moushi entered a plea to a felony charge of violating Health and Safety Code section 11358 (cultivation of marijuana) and was referred to counseling. On August 8, 2011, it was "put … over for deferred judgment" and on August 17, 2011, the case was dismissed. Moushi's attorney and the prosecutor unequivocally declared "that

19.

there are absolutely no deals, no promises" made between Moushi and the District Attorney's Office with respect to Moushi's testimony in this case.

### b. The marijuana offense was not a felony conviction.

Appellant contends that he was entitled to impeach Moushi with a prior conviction for cultivating marijuana for personal use in violation of Health and Safety Code section 11358 because it is a felony crime of moral turpitude. We reject appellant's argument because he did not prove that the marijuana offense was a felony conviction. The record affirmatively shows that Moushi was placed on deferred judgment for this offense and it was eventually dismissed. Since the marijuana cultivation offense did not result in a felony conviction, the trial court did not err by ruling that Moushi could not be impeached with it.[8]

### 3. The trial court did not abuse its discretion by excluding impeachment with Moushi's custody status and possible recent crimes.

#### a. Facts

Moushi testified in an evidentiary hearing that he was taken into federal custody on July 26, 2011, by Immigration and Customs Enforcement officers (INS hold). Deportation proceedings based on his prior firearm conviction had commenced.

Also, Moushi told an investigator for the district attorney and the prosecutor that "prior to this robbery he had dealt marijuana." The prosecutor stated that he did not think Moushi had any pending charges against him.

Moushi was appointed counsel. After consulting with him, Moushi asserted his constitutional protection against self-incrimination and refused to answer any questions pertaining to marijuana sales.

---

[8]    Appellant did not argue below that he should be permitted to question Moushi about the underlying criminal conduct that resulted in the dismissed case.

Defense counsel argued that "the credibility of the witness does spill over into whether or not the evidence that is presented is admissible."

The court determined that the INS hold was not relevant: "I think the fact that he may have run afoul of some condition of his entry is not necessarily morally turpitudinous.... He may or may not be charged with other things, but I think you can't get into those other than felony convictions or crimes of moral turpitude."

Appellant requested a continuance to investigate the circumstances surrounding Moushi's INS hold, stating that it was necessary "to have a fair hearing and have due process to explore all things that are relevant to this case." The prosecutor and counsel for Moushi stated that they did not have any additional information with respect to the INS hold and deportation proceedings. The court denied the request for a continuance.

Before Moushi testified, the prosecutor gave defense counsel a corrected rap sheet. In response, appellant requested a continuance to investigate Moushi's criminal history. This request was denied. Defense counsel "suggest[ed] to the court that the treatment which Mr. Moushi received in this case was extremely deferential to his situation and I would suggest that although the prosecution has continued to assert they did not do anything for Mr. Moushi for his testimony in this case, ..., in fact, he has been given deferential treatment for his cooperation with the prosecution." The prosecutor reiterated that he did not participate in the dismissed marijuana cultivation case and that he "certainly made no deals with" Moushi.

Moushi's attorney testified that he has been representing Moushi in the marijuana case since 2007. He is not aware of any deal with the district attorney's office and does not "believe there was one."

The trial court ruled "So there are no crimes of moral turpitude, and no deals. So there is no criminal history to impeach Mr. Moushi with. [¶] We already talked about the immigration situation, but that is not relevant to his credibility."

21.

**b. It was not error to preclude impeachment of Moushi with his custody status and deportation proceedings.**

Appellant argues that the trial court erred by prohibiting impeachment of Moushi with his current custody status and pending deportation proceedings. We are not persuaded. The trial court did not abuse its discretion in excluding evidence that Moushi currently was in INS custody during the pendency of deportation proceedings. The INS hold and deportation proceedings are based solely on the firearm conviction, which we have already determined is not a crime of moral turpitude.

**c. It was not error to preclude impeachment with any recent crimes.**

Moushi asserted his constitutional protection against self-incrimination with respect to any recent marijuana sales. Appellant did not proffer any evidence pertaining to such recent crimes apart from statements Moushi allegedly made to the prosecutor's investigator. The trial court's decision to allow Moushi to testify after he asserted his constitutional protection against self-incrimination was not an abuse of discretion. Any such criminal activities occurred years after the robbery and are not directly or indirectly related to it. Appellant did not proffer any evidence that Moushi was charged with any recent crimes. Appellant has not persuasively shown that the trial court was obliged to exclude Moushi's testimony in its entirety because he refused to testify about any recent criminal conduct.

**4. There is no evidence that the prosecutor made any deals with Moushi.**

Finally, appellant did not proffer any evidence tending to prove that Moushi received any favorable treatment based on his expected testimony in this trial. The prosecutor repeatedly informed the court that he had not participated in any way in the dismissal of the marijuana cultivation charge. Moushi's counsel also stated that there were no deals or promises. Appellant did not make an offer of proof or set forth any evidence contradicting the prosecutor's averments on this topic. Appellant's contention

22.

that the prosecutor made a deal with Moushi in exchange for their testimony is wholly speculative.

For all of these reasons, we hold that the trial court did not abuse its discretion when it prohibited impeachment of Moushi with his prior convictions, INS hold and deportation proceedings and any recent crimes.

**D.      Allowing Dr. Fraser to be impeached with a judicial finding was proper.**

**1.      Facts.**

Dr. Scott E. Fraser was retained by the defense as an expert on eyewitness identification.  Appellant filed an in limine motion urging the court to exercise its discretion pursuant to Evidence Code section 352 to prohibit impeachment of Dr. Fraser with a judicial finding made in 2001 by Los Angeles Superior Court Judge Powers that Dr. Fraser made material misrepresentations to the court in connection with the "Noriega case."

The prosecutor proffered written materials about the judicial finding.  The documents included the minute order containing the judicial finding and a transcript of a telephone conversation between Dr. Fraser and Mike Kraut, who was a prosecutor in the Noriega case.  Dr. Fraser reported to Judge Powers that Kraut attempted to intimidate him by demanding that he bring five years of personal financial records to court under threat of sanction.  Judge Powers found that this was not true. He made the following written finding, as set forth in the minute order:  "Court finds Dr. Fraser made false misleading statements under oath as a material issue [about the conversation with Mr. Kraut] during his testimony."  Appellant objected to these written materials, arguing they lacked authentication and foundation.

Dr. Fraser testified at an evidentiary hearing that he recognized the minute order but not the documents.  He could not vouch for the transcript's authenticity or thoroughness.

23.

The court stated that he was "not sure I believe what Dr. Fraser said here in court about not knowing what these documents were." Nonetheless, it excluded all of the documents, except the minute order. The court ruled the minute order was not admissible but it could be used to refresh Dr. Fraser's recollection. The court ruled that Dr. Fraser could be impeached with the judicial finding but it would only allow the questions that the prosecutor asked during the evidentiary hearing.

During cross-examination Dr. Fraser testified that in July of 2001 he had a telephone conversation with Mike Kraut. He subsequently told Judge Powers, while under oath, that Kraut "insisted on me bringing five years of my personal financial records to court tomorrow" or there "would be penalties or consequences." Dr. Fraser informed Judge Powers that he believed Kraut was trying to intimidate him. Dr. Fraser replied affirmatively to the prosecutor's question "And a judge found in a later hearing that you had made material misrepresentations to the court. Right?" The prosecutor did not ask any follow-up questions.

**2.      Impeachment with the judicial finding was not an abuse of discretion.**

A witness may be impeached with any prior conduct involving moral turpitude whether or not it results in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352. (*People v. Wheeler, supra,* 4 Cal.4th at pp. 295-296.) A trial court has broad discretion in ruling on an Evidence Code section 352 objection to admission of testimony. "A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

The trial court's decision permitting the prosecutor to impeach Dr. Fraser with the judicial finding was not an abuse of discretion. The court was aware of the applicable standard and it balanced the probative value of this evidence against factors such as the

24.

age of the incident and the fact that it did not directly relate to appellant's guilt or innocence of the charged crimes. It characterized the decision whether to permit impeachment of Dr. Fraser with the judicial finding as a "close call."

Dr. Fraser's character was placed into evidence when he testified about his exemplary reputation in the fields of psychology and eyewitness memory, his experience as an expert witness and awards he has won. The judicial finding was highly probative on the issues of Dr. Fraser's honesty and veracity during court proceedings. Further, testimony before the jury on this topic was brief, requiring only two pages of the reporter's transcript. This testimony was not inflammatory or unfairly prejudicial. The prosecutor did not refer to the transcript or other documents during his questions. He did not refresh Dr. Fraser's recollection with the minute order memorializing the judicial finding. For all of these reasons we uphold the trial court's discretionary ruling.[9]

### E. Confrontation clause issue was forfeited and the related ineffective assistance argument fails.

#### 1. Appellant did not object on this ground at trial.

Appellant argues that restrictions placed on cross-examination of Werner and Moushi violated his state and federal constitutional rights to confront witnesses and present a defense. (U.S. Const., 5th, 6th and 14th Amends.; Cal. Const., art. I, § 15.) Appellant further asserts that a confrontation clause objection would have been futile. Respondent argues that the confrontation clause issue was not forfeited "despite the fact that [appellant] did not object on these specific constitutional claims at trial." As will be explained, a confrontation clause objection was neither directly nor impliedly advanced

---

[9] Appellant also complains that the prosecutor improperly asked if the New School for Social Research, where he was employed as an instructor during the 1970's, "was founded by Communist sympathizers in 1919?" Dr. Fraser testified that such a characterization " is a gross misreading" of the school's history. No objection was interposed to this exchange during trial. Consequently, appellant's complaint was not preserved for appellate review. (Evid. Code, § 353, subd. (a).)

25.

by defense counsel during Werner's or Moushi's testimony. The trial court did not consider or decide the confrontation clause challenge that is now raised for the first time. It would not have been a futile act for appellant to have raised this objection during trial proceedings. Consequently, this issue was not preserved for appellate review.

No procedural principle is more familiar than the forfeiture rule. A judgment shall not be reversed for an evidentiary error unless a timely objection was interposed on the same ground that is asserted on appeal. (Evid. Code, § 353, subd. (a).) The contemporaneous objection rule applies to claims of state and federal constitutional error. (*People v. Daniels* (2009) 176 Cal.App.4th 304, 320, fn. 10.) The objection requirement is necessary because a contrary rule "would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.' [Citation.]" (*People v. Rogers* (1978) 21 Cal.3d 542, 548.)

"Specificity is required both to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence." (*People v. Mattson* (1990) 50 Cal.3d 826, 854.) A claim that the introduction of evidence violated the defendant's rights under the confrontation clause must be specifically presented to the trial court for decision or it is forfeited on appeal. (*Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 327, 314, fn. 3; *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1028, fn. 19; *People v. Burgener* (2003) 29 Cal.4th 833, 869*; People v. Chaney* (2007) 148 Cal.App.4th 772, 779-780.) An Evidence Code section 352 or hearsay objection does not preserve a confrontation clause claim. (*People v. Rowland* (1992) 4 Cal.4th 238, 273, fn. 14; *People v. Catlin* (2001) 26 Cal.4th 81, 138, fn. 14.)

We have carefully examined the lengthy trial record. At no point did defense counsel make any comments that can fairly be said to have raised a confrontation clause objection in connection with impeachment of Werner or Moushi. Respondent's argument

that defense counsel mentioned "credibility" and that word is essentially interchangeable with "confrontation" is patently absurd.

Appellant's reliance on the futility exception to the forfeiture rule is unavailing. The record affirmatively shows that the trial judge carefully listened to all legal points raised by counsel and gave them ample opportunity to articulate their objections. Nothing in the record indicates that if appellant had objected on confrontation clause grounds, the trial judge would not have considered the issue and ruled on it in an appropriate and even-handed manner. (*People v. Blacksher* (2011) 52 Cal.4th 769, 823.)

**2.      The related ineffective assistance claim fails for lack of prejudice.**

Appellant argues that if the confrontation clause issue was forfeited, then defense counsel was ineffective because he did not object on this ground at trial.

To prevail on an ineffective assistance of counsel claim, appellant bears the burden of establishing deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a more favorable outcome. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1052-1053.)

When an ineffective assistance claim can be resolved solely on the basis of lack of prejudice, it is unnecessary to determine whether counsel's performance was objectively deficient. (*In re Jackson* (1992) 3 Cal.4th 578, 604.) This is such a case. It is not reasonably likely that the jury would have returned a more favorable verdict if the court had permitted appellant to impeach Werner and Moushi with every aspect of their criminal histories.

The jury knew that Werner worked as a prostitute and had attempted to possess a stolen vehicle. Further information about Werner's recent prostitution activities would have been cumulative. The recent prostitution charges were filed in another state. There is no evidence that her testimony in this case would have any impact on the out-of-state charges. We do not believe that the jury's impression of Werner's credibility, veracity or

27.

memory would have been significantly altered if it had received additional information about her criminal history and pending out-of-state prostitution charges.

Turning to Moushi, there is no evidence indicating that he had a motive to falsely identify appellant as one of the robbers. There is no evidence indicating that he colluded with the robbers for a nefarious purpose. There is no evidence that Moushi received any benefit from the prosecutor in exchange for his testimony. Moushi was one of the victims in this case. He is not similarly situated to a felon who participated in a crime and then agreed to testify against the other perpetrators in exchange for lesser punishment or immunity. We do not believe that knowledge of Moushi's criminal history and pending immigration proceedings would have significantly impacted the jury's assessment of his credibility, veracity or memory.

Based on the foregoing, we conclude that appellant did not establish prejudice and reject the ineffective assistance claim on this basis.

## III. Instructional Issues.

### A. The instruction on eyewitness identification is legally correct and sufficient.

#### 1. CALCRIM No. 315 is not misleading.

The jury was instructed on evaluation of eyewitness identification with CALCRIM No. 315. This instruction lists 16 criteria jurors may use in evaluating eyewitness credibility, including "[h]ow certain was the witness when he or she made an identification?" CALJIC No. 2.92 is the predecessor to CALCRIM No. 315. CALJIC No. 2.92 also set forth criteria that may be used in assessing eyewitness testimony, including a "level of certainty" criterion. (CALJIC No. 2.92 (5th ed. 1988); *People v. Ward* (2005) 36 Cal.4th 186, 213.)

Appellant argues that "scientific research has disproven the notion that witness certainty is a meaningful indicator of reliability." Therefore, "instructing jurors that confidence is an indicator of reliability amounts to instructing them that a false

28.

proposition is true. This ... contravenes the Constitution's guarantee of due process." As we will explain, this contention has been rejected in several appellate decisions and we discern no basis to reject their reasoning or result.

During trial proceedings appellant did not object to use of CALCRIM No. 315 or request modification of the instruction. Consequently, acceptance of appellant's argument requires us to hold that the trial court had a sua sponte obligation to modify CALCRIM No. 315 by excising the witness certainty factor. Yet, our Supreme Court has expressly held there is no sua sponte duty to give or to modify CALJIC No. 2.92. (*People v. Ward, supra,* 36 Cal.4th at pp. 213-214.) In *Ward*, the defendant argued, in relevant part, that the "level of certainty" factor should have been eliminated from CALJIC No. 2.92. Our Supreme Court unanimously held that "defendant never requested the additions he now asserts should have been given; and we find no basis for imposing a sua sponte duty to modify CALJIC No. 2.92 as now asserted." (*Ward, supra*, at p. 213; see also *People v. Wright* (1988) 45 Cal.3d 1126, 1141 [upheld list of factors in CALJIC No. 2.92 ].) We are bound to follow the decisions of our state's Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Several courts, including the California Supreme Court, have considered and rejected challenges to inclusion of "level of certainty" as a criteria the jury may consider when assessing eyewitness identification. *People v. Johnson* (1992) 3 Cal.4th 1183, held the court did not err in instructing on the certainty factor even where an expert had testified without contradiction that a witness's confidence in an identification does not correlate with the accuracy of the identification. (*Id*. at pp. 1231-1232.) *People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1301-1303 and *People v. Sullivan* (2007) 151 Cal.App.4th 524, 561-562, rejected arguments that the certainty factor erroneously reinforces a misconception that a witness's confidence in an identification correlates with its accuracy.

29.

We are persuaded by this line of authority and find it applicable to CALCRIM No. 315. Inclusion of a witness certainty factor in CALCRIM No. 315 does not *require* a jury to consider a witness's certainty or uncertainty. It does not make any correlation between level of certainty and accuracy. It does not imply that witnesses are more believable if they are certain of their identification. It does not misinform the jury that confidence is an indicator of reliability. Consequently, we uphold CALCRIM No. 315 and find that appellant's due process rights were not infringed by inclusion of this pattern instruction in the jury charge.

**2.    Counsel was not deficient because he did not request a pinpoint instruction on witness certainty.**

In a related claim, appellant argues that if we uphold CALCRIM No. 315, then defense counsel was ineffective because he did not ask the jury to be given the following pinpoint instruction: "[W]itness confidence may not be an indicator of the accuracy of the identification."[10]

As previously stated, the defendant must show counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 688.) To establish prejudice, "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id*. at p. 694.)

In determining whether defense counsel's performance was deficient, we accord great deference to counsel's tactical decisions and reverse only if the record affirmatively

---

**10**    Appellant's argument impliedly recognizes that he could not directly challenge the trial court's failure to give this pinpoint instruction because no one requested amplification of CALCRIM No. 315 at trial. "'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.'" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.)

discloses no rational tactical purpose for counsel's act or omission. (*People v. Stanley* (2006) 39 Cal.4th 913, 954.) If the record fails to show why counsel acted or failed to act, the claim of ineffective assistance must be rejected on appeal unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)

"When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." (*Yarborough v. Gentry* (2003) 540 U.S. 1, 8.) Even debatable trial tactics do not constitute ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 928.) Defendants are not guaranteed "perfect representation, only a '"reasonably competent attorney.' [Citations.]" (*Harrington v. Richter* (2011) __ U.S. __ [131 S.Ct. 770, 791].)

A trial court has the duty to instruct on the general principles of law relevant to the issues presented by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) Upon request, a defendant is entitled to nonargumentative instructions that pinpoint a defense theory. (*People v. Webster* (1991) 54 Cal.3d 411, 443.) Pinpoint instructions need not be given sua sponte. (*People v. Hughes* (2002) 27 Cal.4th 287, 361.)

Having carefully examined the record, we conclude that appellant's suggested pinpoint instruction on witness certainty is a matter that falls within the wide range of trial tactics. No California case has held that supplemental instruction on the topic of certainty is necessary. Defense counsel reasonably could have decided that CALCRIM No. 315 adequately instructed the jurors on the topic of witness identification and, therefore, a pinpoint instruction on eyewitness certainty was unnecessary. (See, e.g., *People v. Wright*, *supra,* 45 Cal.3d at p. 1153 [a special cautionary instruction on eyewitness identification unnecessary and improper because CALJIC No. 2.92 properly highlights relevant factors]; *People v. McCowan* (1978) 85 Cal.App.3d 675, 679-680

31.

[cautionary instruction on eyewitness identification rejected because it did not state a principle of law and singled out one witness].)

We agree with the *Wright* court's conclusion with respect to CALJIC No. 2.92 that supplemental instruction on evaluation of eyewitness testimony is unnecessary because "the eyewitness 'factors' instruction provides the jury with sufficient means to evaluate eyewitness identification testimony and alerts jurors to the factors that may affect eyewitness identifications. In addition, expert witness testimony may be used when appropriate to further elucidate the effect of the factors listed." (*People v. Wright, supra*, 45 Cal.3d at p. 1154.) CALCRIM No. 315 adequately instructed the jury on the evaluation of eyewitness testimony. Further pinpoint instruction was not necessary.

Since appellant has not established deficient performance, this ineffective assistance claim fails.

## B. Omission of CALCRIM Nos. 416 and 418 was not prejudicial.

The court admitted hearsay statements made by Werner about conversations she overheard between appellant, Mixon and Walker. Statements made by Mixon and Walker and recounted by Werner were admitted pursuant to the coconspirators exception to the hearsay rule that is codified in Evidence Code section 1223. The court did not instruct the jury with CALCRIM No. 416 (evidence of an uncharged conspiracy) or CALCRIM No. 418 (coconspirator's statements). Appellant argues that his constitutional due process rights were infringed by the trial court's failure to give these instructions sua sponte.

Respondent argues appellant forfeited this issue by failing to object to the absence of CALCRIM Nos. 416 and 418. This contention fails because the trial court must instruct, even without request, on the general principles of law relevant to and governing the case. Consequently, omission of a required instruction is reviewable on appeal even when the defect was not brought to the court's attention during trial. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715-716.)

32.

Assuming for purposes of this discussion only that the trial court had a sua sponte obligation to instruct with CALCRIM Nos. 416 and 418, the omission of these instructions from the jury charge is harmless. *People v. Jeffery, supra,* 37 Cal.App.4th 209, held that the failure to instruct with CALJIC No. 3.11, which sets forth the requirement that testimony of an accomplice must be corroborated, was harmless error because there was sufficient corroboration of the accomplice's testimony in the trial record. (*Jeffery, supra,* at p. 218.)

Likewise, in this case the record contains ample evidence corroborating the statements Werner overheard. (See Discussion, part II(A)(1).) Further, the evidence proving appellant's guilt is very strong. Both victims identified appellant as one of the robbers at trial. Werner testified that when appellant returned to the house on the evening of the robbery he carried a bag containing jewelry, which the three men divided among themselves. This jewelry matched photographs of jewelry that was stolen from Moushi. Under any standard of review, there is no possibility of a more favorable verdict if the jury had been instructed with CALCRIM Nos. 416 and 418.

## C.     CALCRIM No. 335 does not direct a guilty verdict.

The court gave CALCRIM No. 335, which instructs the jury that accomplice testimony should be viewed with distrust and requires corroboration. Appellant complains about the portion of this instruction providing: "If the crimes of robbery or assault were committed, then Lovelle Mixon and Johnnie Walker, also known as Bam, were accomplices to those crimes. You may not convict the defendant of robbery or assault based on the statement of an accomplice alone."[11]

---

[11]     Appellant's failure to object to this instruction during trial did not result in forfeiture of the issue because "'a defendant need not object to preserve a challenge to an instruction that incorrectly states the law and affects his or her substantial rights.' [Citation.]" (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 364.)

Appellant argues that by informing the jurors that Walker and Mixon were accomplices the instruction "acts to inform the jury that the defendant was the perpetrator and thus directs a verdict against the defendant." This argument is not persuasive.

CALCRIM No. 335 instructs the jury that statements allegedly made by Mixon and Walker require corroboration. It cautions "the jury against blithe acceptance of testimony by an accomplice. CALCRIM No. 335 instructed the jury to require supporting testimony that was independent of the accomplice's statement or testimony." (*People v. Tuggles, supra,* 179 Cal.App.4th at p. 365.) The instruction did not direct the jury that appellant was necessarily a coconspirator or guilty of the robbery because Mixon and Walker were accomplices to the robbery and assault. This is demonstrated by the first word of the contested instructional section, which is "If." The instruction did not inform the jury that Mixon or Walker were accomplices to crimes that were committed by appellant. Also, in determining whether an instruction is ambiguous, it must be read holistically with the rest of the jury charge. (*People v. Kainzrants* (1996) 45 Cal.App.4th 1068, 1075.) We agree with respondent that when CALCRIM No. 335 is read together with the rest of the jury charge there was no modification of the applicable burden of proof and no elimination of any relevant issues from jury consideration. (*Ibid.*)[12]

## IV. Challenges to Sentencing.

### A. Facts.

The probation report reflects that appellant was 25 years old when he was sentenced on December 21, 2011. His criminality began at age 14 with a juvenile referral for theft; he was ordered to complete 20 hours of community service. Six months later he

---

[12] Appellant contends the cumulative effect of the claimed errors requires reversal. However, the only identified error was the trial court's failure to instruct with CALCRIM Nos. 416 and 418. Since there was only one error, there are no cumulative effects to consider.

had another juvenile referral for theft; four additional hours of community service were ordered. Appellant committed his first felony, burglary, in 2002 and was placed in juvenile hall for 25 days. A few months later he committed another theft which was soon followed by another burglary; he spent 86 days and then 120 days in juvenile hall for these crimes. In October 2004 he committed a burglary during which he inflicted great bodily injury on a victim; he was placed in juvenile hall until his 18th birthday. A year later he committed another burglary and vandalism. Appellant suffered his first adult conviction for vandalism in 2005 and was placed on probation for three years and ordered to serve three days in jail. Appellant committed his current crimes soon after completing this probationary period.

The probation report reflects that appellant does not have a significant employment history or possess any marketable skills. Appellant's education is minimal; seventh grade was the final grade he completed. Appellant failed to complete a vocational course in heating and air conditioning. He reportedly obtained a GED and completed six classes at a local junior college. He has two children with different mothers. Appellant reported that there is not a custody or child support order in place for either child. He is reportedly engaged to a third woman

Immediately before sentencing appellant, the court heard and denied his motions for a new trial and to dismiss the prior strikes in the interests of justice pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). With respect to the *Romero* motion, the court reasoned:

> "... I just want to point out that I am familiar with the facts of [the prior] cases. True, Mr. Daniels was a juvenile at the time he committed the assault, but he had two strikes before he committed these cri[m]es. There was not a great time gap between those offenses and the ones in this case. You say he has a minimal adult record, but then he had relatively minimal time as an adult. His birth date is '86; that makes him 25 at this point, and the crimes were a couple of years ago. So it wasn't very long that he was officially an adult; so the lack of criminal record, lack of criminal history, I

35.

think, is not as relevant in this case as it might be. [¶] My concern is apparently he didn't learn from the two strike convictions that he previously suffered. Like I said, it hasn't been that long. He fell in with Mr. Mixon, committed very serious crimes here, and I think there is just absolutely no justification for striking the priors; so the Romero motion will be denied."

Thereafter, the court sentenced appellant on counts 1 and 2 to two concurrent terms of 35 years to life (25 years pursuant to the three strikes law plus a consecutive 10 year term for the firearm enhancement). It stayed the punishment imposed for count 3 pursuant to section 654.

## B.     Denial of the *Romero* motion was not an abuse of discretion.

In ruling on a motion to strike a prior conviction allegation the court must conduct a fact-based inquiry to determine whether the defendant falls outside the spirit of the three strikes law. Relevant factors include the nature of the present offense, the defendant's prior criminal history, the defendant's background, character and prospects as well as other individualized considerations. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) A court's refusal to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) The burden is on the party attacking the sentence to demonstrate that the lower court's decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)

Appellant contends that the trial court had a "mistaken view of its discretionary power under section 1385" and "relied on the wrong standard in exercising its discretion, because it focused on appellant's criminal history." Not so. The court is presumed to have considered all relevant criteria unless the record affirmatively shows otherwise. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 836-837.) Here, the trial court indicated that it read and considered appellant's motion papers, which included factors in addition to appellant's criminal history. The record before us adequately demonstrates

that the trial court applied the correct legal standard and made an individualized decision based on the particular circumstances of the offense and the offender.

The record also supports the trial court's exercise of discretion. Appellant has been committing theft related crimes since he was 14 years old. Home monitoring, probation, short terms of incarceration in juvenile hall and adult jail all failed to extinguish appellant's criminality. The current convictions are appellant's third serious crime in less than 10 years. Appellant committed the home invasion shortly after completing a three-year adult probationary period. His criminality is escalating; the home invasion robbery and assault are significantly more violent and serious than his prior crimes. Appellant was armed with a handgun, which he used as a cudgel. There is nothing in appellant's background or social history that removes him from the scope of the three strikes law. Appellant lacks any substantial work history, educational accomplishments or vocational training. There is no indication that he financially supports his two children or is an active participant in their lives. Appellant's "conduct as a whole was a strong indication of unwillingness or inability to comply with the law. It is clear from the record that prior rehabilitative efforts have been unsuccessful for [him]." (*People v. Philpot* (2004) 122 Cal.App.4th 893, 906.) Appellant does not fall outside the spirit of the three strikes law. Therefore, we uphold denial of the *Romero* motion as a proper exercise of judicial discretion. (*Id*. at p. 907.)

**C.      Use of appellant's juvenile adjudications as strikes does not infringe his constitutional right to trial by jury.**

Appellant argues that use of juvenile adjudications as the basis for prior strike allegations abridges his constitutional right to a jury trial. He acknowledges that the California Supreme Court rejected this contention in *People v. Nguyen* (2009) 46 Cal.4th 1007, 1028, but "submits that *Nguyen* was wrongly decided." Appellant has done little more than register his disagreement with *Nguyen.* We are bound to follow the decisions

of our Supreme Court (*Auto Equity Sales, Inc. v. Supreme Court, supra,* 57 Cal.2d at p. 455), and reject appellant's argument on this basis.

## DISPOSITION

The judgment is affirmed.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
LaPORTE, Pro Tem J.[*]

---

[*]     Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.